**P.A.T., CO. and Kustom Signals, Inc., Plaintiffs,**

v.

**ULTRAK, INC., Defendant.**

**Civil Action No. 95–2273–EEG.**

United States District Court, D. Kansas.

Dec. 2, 1996.

Michael Yakimo, Jr., D.A.N. Chase, Ginnie C. Derusseau, Chase & Yakimo, Overland Park, KS, for P.A.T., Co., Kustom Signals Inc.

Scott A. McCreight, Lawrence Ray Lassiter, McCreight & Lassiter, L.C., Kansas City, MO, Thomas L. Cantrell, Jeffrey E. Bacon, Dallas, TX, Stephen J. Wyse, Jenkins & Gilchrist, P.C., Dallas, TX, for Ultrak, Inc.

### *MEMORANDUM AND ORDER*

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendant's motion for partial summary judgment (Doc. # 21), plaintiffs' motion to strike defendant's motion for partial summary judgment (Doc. # 27) and for oral argument on the motion (Doc. # 32), and the request by all parties for the court's interpretation of certain disputed terms of the claims in suit of plaintiffs' patents. The court held a hearing on November 19, 1996, pursuant to the principles set forth in *Markman v. Westview Instruments, Inc.,* —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The court has reviewed the parties' briefs and submissions and is now prepared to rule. As an initial matter, plaintiffs' motion for oral argument on defendant's summary judgment motion will be denied because the court has determined that oral argument will not be of material assistance in resolving the motion.

Plaintiffs allege that defendant's surveillance system infringes their patents for a vehicle mounted surveillance and videotaping system, specifically, U.S. Patent 4,789,904 (the " '904 patent") and U.S. Patent 4,949,186 (the " '186 patent") (collectively, the "Peterson patents"). Plaintiff P.A.T., Co. ("PAT-

CO") is the owner by assignment of both the '904 and '186 patents. Plaintiff Kustom Signals, Inc. ("KSI") manufactures and sells the patented system, under the trademark EYEWITNESS, pursuant to a license from PATCO.

Relying on a third-party patent, U.S. Patent 4,112,818 (the "Garehime patent" or "the '818 patent"), defendant contends that portions of plaintiffs' patents are invalid for anticipation, pursuant to 35 U.S.C. § 102(a) and (b). Specifically, defendant seeks summary judgment on claims 1, 6, and 7 of the '904 patent and 9, 11, 13, and 15 of the '186 patent ("the challenged claims"). Alternatively, defendant seeks to invalidate the challenged claims under 35 U.S.C. § 103 for obviousness in light of the Garehime prior art patent.

### Uncontroverted Facts

The '904 apparatus patent and the '186 method patent were issued to inventor Roger D. Peterson.[1] Peterson's invention, which is the subject of the '904 and '186 patents, is a vehicle mounted surveillance and videotaping system for use by law enforcement personnel to videotape stops for routine traffic violations. The subject matter of the Garehime patent is a video surveillance and weapon system designed for the protection of a limited region. The Garehime patent was issued in 1978 while the '904 patent was issued in 1988 and the '186 patent was issued in 1990.

### A. The Peterson Patents.

The Peterson patents disclose a system that "provides an audio and visual record" of events which can be used in any type of public or private transportation. Independent claim 1 of the '904 patent discloses the following claimed invention:

A vehicle mounted surveillance system, comprising:

(a) a camera;

(b) a video recorder;

(c) a control head for operator control by a person in the vehicle;

(d) a vault for housing the video recorder;

(e) power supply for providing power for operating said camera, said video recorder and said control head; and

(f) connector means for interconnecting said camera, said video recorder and said control head to form a surveillance system operatively connected to said power supply to enable on/off operation thereof.

Dependent claim 6 of the '904 patent calls for the system described in claim 1, wherein the control head is mounted inside the vehicle and includes power on/off and record/stop switches. Dependent claim 7 of the '904 patent calls for the control head of the system described in claim 6 to have a status indicator means for displaying the operational status of the surveillance system.

The central focus of the invention disclosed in the Peterson patents is to create a video record of events. The '186 method patent discloses the operation of the video surveillance system described in the '904 patent. Claim 9 of the '186 patent calls for:

A method of forming a record of events on a tape, comprising the steps of:

(a) initially installing a video recorder in a vault at a location hidden from view in a vehicle;

(b) loading a tape for recording by the recorder;

(c) connecting a camera to the recorder to provide video input for tape recording thereby;

(d) operating the camera and video recorder to enable a recording on tape to be made; and

(e) providing vehicle electrical power for video recorder operation.

Dependent claim 11 of the '186 patent discloses "[t]he method of claim 9 including the step of automatically activating the surveillance system upon actuation of the vehicle's emergency system." Dependent claim 13 of the '186 patent discloses "the method of claim 9 including the step of preserving the integrity of the audio-visual record for subsequent use." Dependent claim 15 of the '186

---

1. The '186 patent was filed as a continuation of the '904 patent. The specifications of the '186 and '904 patents appear to be identical. See

*P.A.T. Co. v. CrimTec Corp.*, 35 U.S.P.Q.2d 1709, 1712, 1994 WL 848669 (E.D.Mich.1994), *appeal dismissed.*

patent discloses "the method of claim 9 including the step of maintaining the temperature within said vault in a range of 40° F. to 90° F. for providing optimum environment[sic] condition for operation of said video recorder."

### B. *The Garehime Patent.*

The Garehime patent discloses a surveillance and weapon system which is designed "for the protection of aircraft and other confined regions, as for example other vehicles such as ships, trains, and the like, and various enclosures that are frequently subject to criminal attacks such as banks, prisons, courtrooms, stores, offices."

The Garehime '818 patent claims "a weapon and optical scope means in fixed alignment so that the aim thereof is substantially coincident" with "pan and tilt movability." The weapon and optical scope are to be mounted behind a one-way vision screen means which is to be "arranged to substantially completely obscure said weapon and scope means from the view of persons in said limited region." The Garehime patent also discloses an "electronic image sensor means," i.e., a camera, "optically coupled with said scope means to receive an optical image therefrom." The image sensor is connected to a video surveillance screen located on the control console.

In addition, the Garehime patent specification discloses "a video and audio recorder generally designated for preserving a record of events in which the surveillance system is utilized." The video recorder is housed in the control console, which includes a viewing screen, and a sophisticated array of system controls and status indicators, including on/off and record/stop switches. The control console shown in the drawings is housed inside the cockpit of the aircraft. When in operation, the control console is isolated in a lockable compartment or room which is separate from the area under surveillance. When not in operation, the control console may be folded to a closed and locked position, in which state it resembles a utility or work table. The Garehime patent calls for the interconnection of the camera, video recorder, and control console so that the system is operatively connected to the control console.

Finally, the Garehime system calls for a power supply for powering the system.

As described in the patent specification, a "particularly important aspect" of the Garehime invention is that it is "completely hidden" from the view of the subject. This characteristic makes it difficult for the subject to defend against the system's weapon and creates a deterrent effect because a subject cannot determine whether or not the system is present.

### Analysis

### I. Standards Governing Summary Judgment.

The Federal Rules of Civil Procedure should be applied in patent cases no differently than they are applied in any other type of case. *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1116 (Fed.Cir.1985). Thus, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576–77 (Fed.Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

"When a sufficiently supported motion has been submitted, the burden of coming forward and showing that there is a genuine issue of material fact shifts to the non-movant." *Scripps,* 927 F.2d at 1571; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). In deciding a summary judgment motion, we must view the evidence, and resolve all doubts, in the light most favorable to the non-moving party. *Scripps,* 927 F.2d at 1571. The Federal Circuit has said that summary judgment may be used as "a useful procedural tool whereby an unnecessary trial is avoided when there are no material facts in dispute." *Id.* at 1570. It is not, however, intended to "substitute for trial when it is indeed necessary to find material facts." *Id.*

## II. Invalidity for Anticipation.

Defendant seeks partial summary judgment declaring the challenged claims invalid as anticipated by the prior art Garehime patent. We begin our analysis of claimed invalidity with the premise that a patent is presumed valid. 35 U.S.C. § 282 (1984 & Supp.1994); *Litton Systems, Inc. v. Honeywell, Inc.,* 87 F.3d 1559, 1567 (Fed.Cir.1996). In addition, each claim in a patent is presumed valid, independent of the validity of any other claims in the patent. 35 U.S.C. § 282. The party challenging validity has the burden to show invalidity by clear and convincing evidence. *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed.Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987); *Jones v. Hardy,* 727 F.2d 1524, 1528 (Fed. Cir.1984). Further, the fact that the Peterson patents have been found valid in other litigation is to be given some weight, though not *stare decisis* effect. *See P.A.T. Co. v. CrimTec Corp.,* 35 U.S.P.Q.2d 1709, 1994 WL 848669 (E.D.Mich.1994); *Mendenhall v. Cedarapids, Inc.,* 5 F.3d 1557, 1569 (Fed.Cir. 1993), *cert. denied,* 511 U.S. 1031, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994). A prior decision of validity only serves to inform the court that caution should be exercised in reaching a contrary legal conclusion. *Id.*

### A. Standard For Anticipation.

Not every invention is patentable. An inventor may not obtain a patent for an invention that was known or used by others, or patented or described in a printed publication, prior to its invention by the applicant. 35 U.S.C. § 102(a). Similarly, patents are not available for inventions that were patented or described in a printed publication, or in public use or on sale, more than one year prior to the date on which the patent application is made. 35 U.S.C. § 102(b).

Section 102 prescribes the doctrine of anticipation by requiring novelty of invention. A claim is said to be "anticipated" if comparison of the claimed invention with a prior art reference reveals that every element in the claim under attack is shown or described, organized, and functioning in substantially the same manner as in the prior art reference. *In re King,* 801 F.2d 1324, 1326 (Fed. Cir.1986). Anticipation is most easily understood as the converse of infringement: "That which will infringe, if later, will anticipate, if earlier." *Knapp v. Morss,* 150 U.S. 221, 14 S.Ct. 81, 37 L.Ed. 1059 (1893).

The standard for anticipation is rigorous requiring that every element of the claimed invention, as arranged in the claim, be disclosed either specifically or inherently by a single prior art reference. *See Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1565 (Fed. Cir.1992); *Scripps,* 927 F.2d at 1576–77; *Lindemann Maschinenfabrik GMBH, v. American Hoist & Derrick Co.,* 730 F.2d 1452, 1458 (Fed.Cir.1984). If the court must go beyond a single prior art reference to provide missing disclosures of the claimed invention, the proper challenge is under section 103 for obviousness. *Scripps,* 927 F.2d at 1577. Every element of the challenged claim need not be expressly delineated in the single prior art reference, but may be inherently disclosed by prior art if "the prior art necessarily functions in accordance with the limitations" of the challenged claim. *King,* 801 F.2d at 1326; *see also Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 953 F.2d 1360, 1369 (Fed.Cir.1991), *cert. denied,* 506 U.S. 817, 113 S.Ct. 60, 121 L.Ed.2d 28 (1992). Analysis of invalidity for anticipation involves

a two-step process: (1) claim construction of the challenged claims (a question of law); and (2) a determination of whether a single prior art reference anticipates the challenged claims (a question of fact). *Markman,* —— U.S. at ——, 116 S.Ct. at 1387; *Beachcombers v. WildeWood Creative Prods., Inc.,* 31 F.3d 1154, 1160 (1994). Thus, summary judgment is not appropriate unless, based on the court's construction of the patent claims, there is "no reasonable basis on which the non-movant can prevail" on the anticipation issue. *Scripps,* 927 F.2d at 1576.

### B.  *Claim Construction.*

The focus in construing disputed terms of a patent claim is on an objective test of what one of ordinary skill in the art at the time of the invention would have understood the terms to mean. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 986 (Fed.Cir. 1995) (in banc), *aff'd,* —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). In construing the challenged claims, the court looks first to the patent claims, the patent specification, and the prosecution history. *Markman,* 52 F.3d at 979.

The court may refer to other claims in the same patent to ascertain the intended meaning of a disputed term in a claim, but may not read limitations from other claims into an independent claim. *Environmental Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 699 (Fed.Cir.1983), *cert. denied,* 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). The concept of claim differentiation provides that "each claim of a patent constitutes a separate invention and gives rise to separate rights." *Jones v. Hardy,* 727 F.2d at 1524; *see Tandon Corp. v. United States Int'l Trade Comm'n,* 831 F.2d 1017, 1023–24 (Fed.Cir. 1987) (claim differentiation presumes that the difference between claims is significant).

Claims must be read in light of the patent specification. *Markman,* 52 F.3d at 979. The specification contains a written description of the invention and includes a best mode or preferred embodiment of the invention. *Id.* "[T]he description in the specification may act as a sort of dictionary, which explains the invention and may define terms used in the claims." *Id.* The claims, howev-

er, measure the scope of the invention. *SRI Int'l,* 775 F.2d at 1121.

Claims also should be read in light of the patent's prosecution history. *Markman,* 52 F.3d at 980. Although the prosecution history should be used to interpret the terms of the claims, "it too cannot 'enlarge, diminish, or vary' the limitations in the claims." *Id.* (citations omitted).

The court also may consult dictionaries and technical treatises, if necessary, to help the court understand the underlying technology or to find the ordinary meaning of a disputed term. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1584 n. 6 (Fed.Cir. 1996). If the court cannot determine the meaning of a disputed term from the patent documents and relevant dictionary definitions, the court may consult extrinsic evidence such as prior art or expert testimony. This evidence is used solely for the court to understand scientific principles, technical terms, or terms of art that appear in the patent and prosecution history. *Markman,* 52 F.3d at 980; *see Vitronics,* 90 F.3d at 1582–83. There is no parol evidence rule in patent law. Extrinsic evidence cannot be used to explain ambiguity in claim terminology or to vary the claim terms. *Vitronics,* 90 F.3d at 1583; *Markman,* 52 F.3d at 986. "The invention protected by the patent must be covered by the claims, otherwise it is lost." *Id.* at 985.

The court begins with an examination of the words of the claims themselves, "both asserted and nonasserted, to define the scope of the patented invention." *Vitronics,* 90 F.3d at 1582. Terms in a claim are generally given their ordinary and customary meaning. *Hoechst Celanese Corp. v. BP Chemicals Ltd.,* 78 F.3d 1575, 1578 (Fed.Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 275, 136 L.Ed.2d 198 (1996). However, a patentee may give terms a different meaning, so long as the meaning is stated clearly in the patent specification or file history. *Id.; Markman,* 52 F.3d at 979–80.

The meanings of the terms "vault" and "control head," as used in the challenged claims, are central to defendant's anticipation challenge to the Peterson patents. Although

not relevant to defendant's summary judgment motion, the parties also dispute the meaning of the terms "vehicle," "bulletproof," and "fireproof." The court's construction of all of these disputed terms will govern the court's validity and infringement analysis at all stages of this case, including trial. *See Intervet Am. v. Kee–Vet Laboratories, Inc.,* 887 F.2d 1050, 1053 (Fed.Cir.1989); *SRI Int'l,* 775 F.2d at 1121.

1. *Meaning Of "Vault".*

■ Claim 1 of the '904 patent discloses "a vault for housing said video recorder." *See* claim 1 of the '186 patent. The court construes "vault" in this context to mean a durable box-type steel container, that may be locked, and that is of a size capable of housing a video recorder and being placed in the trunk of an automobile.[2]

The court's construction is consistent with the preferred embodiment described in the specifications. The specifications for the Peterson patents provide:

*The video recorder 16, interface box 22 and environmental control unit are housed within the vault 20 which is mounted in the trunk of the patrol car 10. The vault 20 is a stainless steel vault secured with a tamper-resistant padlock. The vault 20 is fireproof and bullet-proof. It is extremely durable,* much like the flight recorder box on airplanes. *The interior of the vault 20 is provided with a stamped aluminum insert having recesses for receiving the video recorder,* interface box and environmental control unit. A foam insert in the lid of the vault 20 is provided to cushion the components of the system in the event an effort is made to open the vault 20 or the patrol car 10 is destroyed. The vault 20 is an environmentally controlled steel vault, *substantially box-like in shape and having an upper portion hingedly connected to a lower portion. The two portions of the vault close together*

*and are securely locked by a padlock.* The padlock is of heavy-duty construction so that it will withstand efforts to unlock it and thereby gain access to the video recorder housed with in the vault 20.

The vault 20 incorporates a heater and cooling element housed in the environmental control unit to maintain the temperature within the vault 20 in the range of 40° F. to 90° F. *The vault 20 is bolted in the trunk of the patrol car.*

(Emphasis added.) The specifications, especially the underlined portions above, strongly support the court's definition of vault. *See Modine Mfg. Co. v. United States Int'l Trade Comm'n,* 75 F.3d 1545, 1550 (Fed.Cir.) (interpretation of term that would exclude the inventor's preferred embodiment in the specification is rarely the correct interpretation), *cert. denied,* —— U.S. ——, 116 S.Ct. 2523, 135 L.Ed.2d 1048 (1996).

The court's construction is further supported by the use of the term "vault" in the other claims of the '904 and '186 patents. Claim 9 of the '904 patent requires that the vault be a "closed bulletproof and fireproof chamber." *See* claims 6, 14 of the '186 patent. In addition, apparatus claim 14 of the '904 patent requires that the vault be mounted in the trunk of the vehicle. *See* claims 6, 14 of the '186 patent. All of these references support the court's interpretation that the "vault" is a durable container, that may be locked, and that is of a size capable of being placed in the trunk of an automobile.

The prosecution history of the Peterson patents also favors the court's construction. The '904 patent application originally was rejected as "obvious" in light of a prior art magazine article that generally discussed police car video surveillance systems. The patent examiner stated that storing the video recorder in a vault was "simply a matter of design option" and was not patentable. Peterson responded that amended claim 1, which recites "that the vault is located in a locked compartment of the vehicle,"[3] differs

---

2. The term "vault" is used in the challenged claims of both the '186 and '904 patents. The court will construe the term "vault" as used in both patents in the same manner.

3. For some reason not clear in the record or the prosecution history, claim 1(d) of the '904 patent as issued does not contain this language. The patent specification and the prosecution history, however, provide sufficient support for the con-

from the prior art. Peterson urged that his invention was novel and patentable because the system described in the magazine article did not speak to the specifics of storing the video recorder and clearly permitted the video tape to be rewound and played back.[4] Peterson also urged that "[t]here is absolutely no suggestion [in the magazine article] of a vault in a locked compartment of a vehicle receiving the video recorder or storing the video tape during and after processing." Soon thereafter and without elaboration on this point, the patent examiner issued the '904 patent. From this history, it is apparent that the size of the claimed vault (capable of housing a video recorder and being stored in the trunk of an automobile) and the ability to lock the vault are essential elements of the meaning of the term "vault" as used in the Peterson patents.

The court's construction comports with the pertinent common definitions of "vault" as "a room for the safekeeping of valuables and commonly built of steel" and "a special compartment [usually] in a piece of office equipment for the safekeeping of money." Webster's New Int'l Dictionary 2536 (3d ed. 1986). Other relevant definitions of "vault" include "a room or compartment, often built of or lined with steel, reserved for the storage and safekeeping of valuables" and "a strong metal cabinet, usually fireproof and burglarproof, for the storage of valuables." Random House Unabridged Dictionary (2d Ed.1993). These definitions support the court's construction of vault as a durable steel container, capable of being locked, and of a size capable of housing a video recorder.

The court has construed the term "vault" based solely on intrinsic evidence (the claims, specification, and prosecution history) and the pertinent dictionary definitions available to the court. Plaintiffs and defendant both agree that the meaning of the term "vault" should be ascertained solely by reviewing the intrinsic evidence and relevant dictionary definitions. The court rejects, however, the

proposed definitions of "vault" advanced by plaintiffs and defendant.

Plaintiffs initially proposed in their summary judgment briefing that the term vault is "a durable, protective housing for the video recorder of the system." The court essentially has included the elements of this definition as part of its definition of vault. The court does not believe plaintiffs' definition, however, fully describes the term vault as it is used in the Peterson patents. At the Markman hearing, plaintiffs proposed that the term "vault" means "a secured durable housing in which the video recorder operates when the system is in use, and which provides a safekeeping function to protect the recording against damage and unauthorized access." Although this definition specifies many of the vault's purposes and functions in practice, the court does not believe that this definition adequately describes the inherent characteristics of the "vault" in the Peterson patents.

█ In its summary judgment briefing, defendant asserted that the term "vault" means "a place to house the video recorder." Defendant vigorously argued that the court should not read additional limitations contained in other dependent claims (such as bulletproof and fireproof in dependent claim 9) into the meaning of vault in independent claim 1 of the '904 patent. In sharp contrast, defendant argued at the Markman hearing that the term "vault" means a metal enclosure that has a temperature control regulator, is bulletproof, fireproof, and tamper proof, and prevents previously taped events from being taped over.

Defendant's first proposed definition does not adequately describe all of the characteristics of a "vault" as used in the Peterson patents. In addition, the court rejects defendant's second proposed definition because it is inconsistent with the doctrine of claim differentiation. As noted previously, the concept of claim differentiation provides that "each claim of a patent constitutes a separate

---

clusion that the vault in claim 1 is located in a locked compartment of the vehicle.

4. Peterson contended that his invention facilitated the stated objective of newly added claim 15

(claim 14 of the final '904 patent), i.e., to prevent the playback, rewinding, and erasure of the video tape by the vehicle operator or other individual.

invention and gives rise to separate rights." *Jones v. Hardy,* 727 F.2d at 1528. Defendant argued at the Markman hearing that the term "vault" appearing in claim 1 of the '904 and '186 patents should be read in light of the patent specifications. The patent specifications, which discuss the best mode or preferred embodiment of the invention, state that the vault has a temperature control regulator, is bulletproof, fireproof, and tamper proof, and prevents previously taped events from being taped over. Although claims are interpreted in light of the patent specification, this "does not mean that everything expressed in the specification must be read into all the claims." *SRI Int'l,* 775 F.2d at 1121 (quoting *Raytheon Co. v. Roper Corp.,* 724 F.2d 951, 957 (Fed.Cir.1983), *cert. denied,* 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984)); *see Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1277 (Fed.Cir. 1995); *Intervet,* 887 F.2d at 1053 ("[L]imitations appearing in the specification will not be read into claims."). "[I]nterpreting what is *meant* by a word *in* a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'" *Id.* (quoting *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1433 (Fed.Cir.1988)). The specification identifies only the best mode of practicing an invention, not the scope of the invention.[5] *Transmatic,* 53 F.3d at 1276. The claims measure the scope of the invention.[6] *SRI Int'l,* 775 F.2d at 1121. The court accordingly rejects defendant's contention that the limitations found in dependent claims of the Peterson patents (such as fireproof and bulletproof) should be read into the meaning of "vault" found in an independent claim.[7]

### 2. *Meaning Of "Control Head".*

■ Claim 1(c) of the '904 patent discloses "a control head for operator control by a person in the vehicle." Dependent claims 6, 7, and 8 further provide that the control head is mounted inside the vehicle, includes a power on/off switch and a record/stop switch subject to operator control, and includes an LED display for displaying the date, time, and operational status of the surveillance system.

The specification of the '904 patent discusses the "control head" as being mounted in the driver's compartment of the vehicle, within "easy reach of the police officer" to facilitate operation of the system. The LED display lights indicate when the tape is nearing the end and whether the microphone is operational. The control head also is discussed as including a light indicating whether the system is on. To insure the integrity of the videotape, the control head is designed so as to prevent rewinding and erasure by recording over the video tape.

Neither plaintiffs nor defendant has introduced any prosecution history to support their proposed interpretations of "control head." The prosecution history provides that the vault which holds the video recorder is in a locked compartment of the vehicle. When read in the context of the specification, this statement confirms that the "control head" provides a means for remotely operating the video recorder.

From the patent claims, specification, and prosecution history, the court construes "control head" to mean a control panel that is located within the vehicle and is accessible to the vehicle operator, and that provides a means for remotely operating the video recorder.

---

5. Defendant is well aware that the limitations of terms found in dependent claims should not be read into those same terms found in an independent claim. Defendant argued to this court that "[a]n *additional* limitation in a dependent claim should not be imported into the independent claim—even if the additional limitation is described in the specification." Def.'s Reply In Supp. Of Mot. For Summary J. at 4. With respect to the term "vault," defendant argued that "these characteristics [i.e., bulletproof and fireproof chamber] of a vault may not be implied into the vault of claim 1, because the claim

element there is simply a 'vault'." Def.'s Mem. In Supp. Of Mot. For Summary J. at 17.

6. In fact, the Peterson patents state that only preferred embodiments are shown and that the scope of the invention is defined by the claims.

7. Counsel for defendant conceded at the Markman hearing that some violence to the claim differentiation doctrine would result by importing defendant's suggested limitations into the term "vault" in claim 1.

### 3. *Meaning of "Vehicle".*

■ At the Markman hearing, plaintiffs and defendant requested the court to construe the meaning of the disputed term "vehicle" in the challenged claims. Plaintiffs contend that the term "vehicle" is "a motor vehicle such as a police patrol car." Plaintiffs offer no support for their argument that the court should include a specific example of a vehicle as part of the definition. The jury's function is to decide if a specific example meets the definition of "vehicle" as that term is used in the Peterson patents.

Defendant claims that the term "vehicle" means "a means of conveyance or transport including any type of public or private transportation." The court will adopt defendant's proposed definition, which is supported by the Peterson patents and is consistent with the ordinary meaning of "vehicle." The patent specifications provide:

> It is understood, however, that the use of the surveillance system of the present disclosure is not limited to police surveillance. The surveillance system may be used in any type of public or private transportation.

Mr. Peterson clearly attempted to maintain a broad definition of vehicle although the vehicle discussed as the preferred embodiment is a police patrol car. Plaintiffs' definition of vehicle as a motor vehicle potentially is misleading and may exclude many types of public and private transportation. Subways, trolley cars, bicycles, and stagecoaches are all means of conveyance or transport that typically are not considered motor vehicles.

The term "vehicle" should be given its ordinary and accustomed meaning because there is no indication in the patent documents that Mr. Peterson intended otherwise. *See Hoechst,* 78 F.3d at 1578; *Transmatic,* 53 F.3d at 1276. The court's construction of "vehicle" is consistent with the common understanding of vehicle as "a means of conveyance or transport" and a "means of carrying or transporting something: conveyance." Random House Unabridged Dictionary (2d ed. 1993); Webster's New Int'l Dictionary (3d ed. 1986). Based on the patent claims, specification, and relevant dictionary definitions, the court construes "vehicle" to mean "a means of conveyance or transport including any type of public or private transportation." [8]

### 4. *Meaning of "Bulletproof" and "Fireproof".*

Plaintiffs requested in their Markman brief that the court construe the terms "bulletproof" and "fireproof" in the challenged claims. Plaintiffs contend that "bulletproof" and "fireproof" means resistant to bullets and fire respectively. Defendant has not offered a proposed definition. The court has defined "vault" without the bulletproof and fireproof limitation, so it appears unnecessary for the court to construe these terms at this time.

### C. *Anticipation Of Claims In The '904 Patent.*

■ Having defined the disputed terms, we must determine whether claims 1, 6, and 7 of the '904 patent are anticipated by the Garehime prior art reference. Claim 1 discloses a video surveillance system for use in an automobile or like vehicle, which includes: (1) a camera, (2) a video recorder, (3) a control head for operator control by a person in the vehicle, (4) a vault for housing the video recorder and which is stored in a locked compartment of the vehicle, (5) a power supply, and (6) a means for interconnecting the system components. The control head and the vault are separate elements, which are mounted in separate and remote portions of the vehicle. Claims 6 and 7 of the '904 patent require that the control head be mounted and have on/off and record/stop switches and status light indicators.

---

8. The court notes that its construction of "vehicle" does not include specific examples of vehicles such as an automobile or patrol car. On the other hand, the court's construction of "vault" includes a limitation that the vault "is of a size capable of ... being placed in the trunk of an automobile." The use of the term "automobile" in the definition of vault restricts the size of the vault only, but does not restrict the vault of the Peterson patents to use in a particular type of vehicle.

Plaintiff does not dispute that Garehime discloses an interconnected surveillance system comprising a camera and video recorder with a power supply and a control panel. The real question is whether the other elements of the challenged claims are disclosed in the Garehime reference, i.e., whether the Garehime patent discloses a "vault" and a "control head" as those terms are defined herein, and whether these elements are arranged as in the challenged claims. *See Lindemann,* 730 F.2d at 1458. What the prior art reference (Garehime patent) discloses is a question of fact. *Scripps,* 927 F.2d at 1576–77. It certainly is disputed whether the Garehime reference on its face discloses a "vault" or "control head" and whether these elements are arranged as in the Peterson patents. Further, defendant has not offered any extrinsic evidence (disputed or undisputed) to explain further the meaning of the disclosures of the Garehime reference.

On the present record, the court seriously questions whether defendant can prove invalidity by clear and convincing evidence based on the Garehime prior art. Nevertheless, out of an abundance of caution, the court declines to resolve these issues as a matter of law at this juncture. Rather, the court leaves it to the jury to determine whether the vault limitation of the '904 patent is anticipated by the separate compartment or control console disclosure in the Garehime patent, or whether the control head disclosed in the '904 patent is anticipated by the control console of the Garehime patent. Defendant's motion for summary judgment as to claims 1, 6, and 7 of the '904 patent is denied.

D. *Anticipation Of Claims In The '186 Patent.*

■ Likewise, defendant's challenges to claims 9, 11, 13, and 15 of the '186 patent cannot be resolved in defendant's favor as a matter of law. Although the Garehime patent does not expressly claim a particular method, defendant urges that several of the methods claimed by the '186 patent are inherent in the Garehime patent and therefore are anticipated.

Defendant argues that the method disclosed in claim 9 of the '186 patent, which involves initially installing the video recorder in a vault at a location hidden from view in a vehicle, is anticipated by the method disclosed in the Garehime patent, i.e., the installation of a video recorder in a console in the cockpit of an airplane, which is substantially hidden from view by the bulkhead. Defendant urges that the Garehime patent calls for a "vault" in that the control console is itself a vault and the placement of the console in a separate lockable compartment creates a second "vault."

Under our present construction of the term "vault" as a durable box-type steel container, that can be locked, and that is of a size capable of housing a video recorder and being placed in the trunk of an automobile, we cannot resolve the anticipation issue in defendant's favor as a matter of law. Defendant has not proven by clear and convincing evidence that claim 9 of the '186 patent, requiring initial installation of the video recorder in a vault, is anticipated by the Garehime patent's disclosure of a video recorder housed in the control console which is placed in the cockpit of an airplane. As discussed below with regard to claim 13, the requirement of installing the video recorder in the vault is designed to prevent operator access to the rewind and playback functions of the video recorder, while the Garehime invention contains no such method for protecting against erasure of the tape by the operator or other individual.

Claim 11 of the '186 patent calls for the method described in claim 9, including the step of automatically activating the surveillance system upon activation of the vehicle's emergency system. The Garehime patent discloses a surveillance system that may be activated in response to an alert signal, but is not described as "automatic." The court cannot find anticipation of claim 11 of the '186 patent as a matter of law based on the Garehime disclosure. It is for the jury to determine whether the Garehime disclosure is the equivalent of the automatic activation feature of claim 11 of the '186 patent.

Claim 13 of the '186 patent discloses a method for "preserving the integrity of the

audio-visual record for subsequent use." As stated in the specifications, the main purpose of the audio-visual record in the Peterson system is to provide "an unbiased record of the events occurring at the scene of a traffic stop or other police matter." In addition, the system provides a "deterrent to attacks on police officers" and a "record of behavior of the motorist which may be used as evidence in claims of police abuse, wrongful arrest, or civil rights violations." The Garehime patent discloses the use of a video recorder, but states only that "it is preferable to include a video and audio record so as to keep a video and audio history of the hijacking or other criminal event for insurance and court purposes." We question whether the passing reference to the "preferable" inclusion of an audio-visual recording system in the Garehime system anticipates the limitation of claim 13 of the '186 patent that the method protect the integrity of the video tape. It is one thing to make a video record (which Garehime could be found to disclose), and quite another to preserve such a record once made. Nevertheless, we need not resolve the issue on the present motion. Certainly, defendant has not proven by clear and convincing evidence that the Garehime patent anticipated claim 13 of the '186 patent.

Claim 15 of the '186 patent calls for the method described in claim 9 to include a step of maintaining the temperature within the vault in a range of 40° F. to 90° F. to provide optimum conditions for operation of the video recorder. The Garehime patent discloses operation of a video recorder in a commercial passenger aircraft cockpit, which defendant contends "inherently" calls for the temperature to be maintained between 40° F. and 90° F. We cannot state as a matter of law that the vault temperature requirement of the '186 patent was inherent in the Garehime patent by virtue of the disclosure that the control console is placed in the cockpit of the aircraft (which is generally kept within that temperature range). Again, we leave this factual determination to the jury.

We, therefore, conclude that defendant is not entitled to summary judgment declaring claims 1, 6, and 7 of the '904 patent and claims 9, 11, 13, and 15 of the '186 patent invalid under the doctrine of anticipation.

## III. Invalidity Based On Obviousness.

█ Defendant's alternative motion for summary judgment under the obviousness doctrine also will be denied. Based on our construction of the challenged claims, the definitions of "vault" and "control head," and the evidence in the present record, we cannot say, as a matter of law, that the challenged claims in the '904 and '186 patents would have been obvious to one skilled in the art of video surveillance systems in light of the Garehime patent.

A patent may not be obtained if it contains obvious differences from prior art. An invention is obvious if—

> the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103. "[T]he obviousness inquiry is highly fact-specific and not susceptible to per se rules." *Litton Systems,* 87 F.3d at 1567. Defendant must prove obviousness by clear and convincing evidence. *Id.*

Defendant has failed to set forth uncontroverted facts sufficient to establish obviousness, as it is defined in section 103. Defendant cannot simply present evidence of anticipation and then say "ditto" to establish obviousness. *See Hoover Group, Inc. v. Custom Metalcraft, Inc.,* 66 F.3d 299, 303 (Fed.Cir.1995) (evidence of anticipation does not equate with evidence of obviousness); *PPG Indus., Inc. v. Guardian Indus. Corp.,* 75 F.3d 1558, 1566 (Fed.Cir.1996) (reliance only on prior art patent insufficient to provide a basis for concluding that the challenged claims would have been obvious to one skilled in the art).

Rather, the court must determine obviousness based on four factual inquiries, including: (1) the differences between the prior art and challenged claims; (2) the level of ordinary skill in the field of the pertinent art at the time of plaintiff's invention; (3) what one

possessing that level of skill would have deemed to be obvious from the prior art reference; and (4) objective evidence of obviousness or nonobviousness. *See B.F. Goodrich Co. v. Aircraft Braking Systems Corp.*, 72 F.3d 1577, 1582 (Fed.Cir.1996); *Hoover Group*, 66 F.3d at 303. Objective evidence of obviousness or nonobviousness may include the commercial success of the invention, whether the invention satisfied a long-felt need in the industry, failure of others to find a solution to the problem at hand, and copying of the invention by others. *See B.F. Goodrich*, 72 F.3d at 1582.

Defendant did not present a statement of numbered material facts in its summary judgment motion to support its obviousness argument. The affidavit of Mr. Simpson, as submitted by defendant, does not suffice to meet defendant's evidentiary burden. First, the affidavit does not refer to the Garehime patent, the only prior art reference relied on by defendant for its obviousness argument. Second, the affidavit does not speak specifically to many of the critical factual issues of obviousness outlined above and is certainly insufficient to meet defendant's burden to establish obviousness by clear and convincing evidence. Finally, Mr. Simpson's affidavit refers only to parts of the challenged claims that were allegedly obvious at the time of the invention, but does not discuss many other aspects disclosed in the claims, e.g., a vault.

In addition, defendant has failed to establish that the Garehime invention is within the same field as the Peterson invention or that it is "analogous" art. Courts should not consider references that are "too remote to be treated as prior art." *In re Clay*, 966 F.2d 656, 658 (Fed.Cir.1992) (quoting *Panduit Corp. v. Dennison Mfg.*, 810 F.2d 1561, 1568 n. 9 (Fed.Cir.), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987)). The determination of whether a prior art reference is within the inventor's field or an analogous art is a factual issue. *Id.* Courts consider two factors in determining whether prior art is analogous: "(1) whether the art is from the same field of endeavor, regardless of the problem addressed, and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved." *Id.* at 658–59. Counsel's assertions of the relevant field or art are insufficient. Based on the bare factual record, the court cannot conclude that the Garehime defensive weapon system is within the same or analogous field as the Peterson invention.

Plaintiff has moved to strike defendant's motion for summary judgment based on obviousness for defendant's alleged failure to comply with D.Kan.Rule 56.1. In light of the forgoing findings, the court need not address this issue.

IT IS THEREFORE ORDERED that defendant's motion for partial summary judgment (Doc. # 21) is denied.

IT IS FURTHER ORDERED that plaintiffs' motion to strike defendant's motion for partial summary judgment (Doc. # 27) is denied as moot.

IT IS FURTHER ORDERED that plaintiffs' motion for oral argument (Doc. # 32) is denied.