**KUSTOM SIGNALS, INC., Plaintiff,**

v.

**APPLIED CONCEPTS, INC., and John L. Aker, Defendants.**

**Civil Action No. 96–2296–EEO.**

United States District Court,
D. Kansas.

Feb. 9, 1998.

Michael Yakimo, Jr., D.A.N. Chase, Ginnie C. Derusseau, Chase & Yakimo, Overland Park, KS, for Plaintiff.

Douglas R. Richmond, Gerald A. King, Thomas H Stahl, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, Ronald Craig Fish, Falk, Vestal & Fish, Morgan Hill, CA, for Defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Senior District Judge.

This matter is before the court on defendants' motion for partial summary judgment (Doc. # 39), plaintiff's motion in limine (Doc. # 59), defendants' motion to strike portions of plaintiff's proposed claim construction findings (Doc. # 65), and the request by all parties for the court's interpretation of certain disputed terms of the claims in suit of plaintiff's patent. The court held a hearing on December 2 and 3, 1997, pursuant to the principles set forth in *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The court has reviewed the parties' briefs and submissions and is now prepared to rule. For the reasons set forth below, defendants' motion for summary judgment will be granted in part and denied in part, plaintiff's motion in limine will be denied, and defendants' motion to strike will be denied.

### Factual Background

For purposes of defendants' motion, the following is a brief summary of the material facts that are uncontroverted, deemed admitted or, where controverted, viewed in the light most favorable to the non-movant, pursuant to Federal Rule of Civil Procedure 56 and District of Kansas Rule 56.1.

Plaintiff Kustom Signals, Inc. ("Kustom") and defendant Applied Concepts, Inc. ("ACI") manufacture and sell traffic radar and other equipment used by law enforcement agencies. Defendant John L. Aker is an independent contractor who has designed traffic radar for ACI since 1978. Kustom

alleges that ACI's Stalker Dual radars infringe Kustom's patent for such a radar device, specifically, U.S. Patent 5,528,246 (the " '246 patent" or "Kustom radar").[1]

On a very general level, both the Kustom and Stalker Dual radars (1) measure the Doppler shift of vehicles within the radar's range, (2) convert the Doppler shift of a reflected signal from an analog signal to a digital signal, (3) use a method called a fast fourier transform to analyze the digital data and transform it into the frequency domain, (4) employ various measures to qualify the data so as to eliminate false signals or noise, and (5) display the speed of the target vehicle for the operator.

On June 30, 1994, Kustom submitted an application to the Patent and Trademark Office ("PTO") for the '246 patent, a traffic radar with digital signal processing, which contained 21 claims. The PTO rejected Kustom's original 21 claims for obviousness. On June 5, 1995, Kustom filed an amended patent application adding 21 new claims and deleting the original 21 claims. On June 18, 1996, the PTO issued the '246 patent to Kustom, as the sole owner of the patent by assignment from the inventors. The '246 patent discloses a traffic radar device which processes Doppler return information in an effort to improve target identification and minimize interference and unwanted harmonics.

Original independent claim 1 of the '246 patent disclosed:

A method of processing Doppler return information in a traffic radar comprising the steps of:

(a)[2] receiving Doppler return information containing at least one return signal derived from a target vehicle,

(b) presenting said Doppler return information as digital data,

(c) transforming said data into the frequency domain to provide a spectrum that includes frequency components corresponding to Doppler return signals contained in said information,

(d) validating said frequency components present in said spectrum by determining if each component has a greater magnitude than an average magnitude representative of the sensitivity of the spectrum, and

(e) determining the magnitude and frequency of each valid component.

New claim 1 did not include original clauses (d) and (e) but added the following:

(d) storing said components in a memory,

(e) searching said components in memory for the component that meets preselected magnitude or frequency criteria, and

(f) indicating the speed of the target vehicle corresponding to the component that meets said criteria.

Original independent claim 16 disclosed:

In a traffic radar, apparatus for processing Doppler return information comprising:

(a) means for receiving Doppler return information containing at least one return signal derived from a target vehicle, and for presenting said information as digital data,

(b) means for transforming said data into the frequency domain to provide a spectrum that includes frequency components corresponding to Doppler return signals contained in said information,

(c) means for determining if each of said components has a greater magnitude than an average magnitude representative of the sensitivity of the spectrum, whereby to validate those frequency components having said greater magnitude, and

(d) means for determining the magnitude and frequency of each valid component and retaining the same in memory.

New claim 16 did not include original clauses (c) or (d) but added the following:

(c) memory means for storing said components,

(d) means for searching the components stored in said memory means to identify

---

**1.** The court's reference to "Kustom radar" refers to the device disclosed by the claims of the '246 patent, not the actual radar Kustom developed pursuant to the patent.

**2.** Many of the claim paragraphs in the original and amended '246 patent do not contain paragraph letters. The court has added paragraph letters to many of the claims for convenience in referencing particular portions of the claims.

the component that meets preselected magnitude or frequency criteria, and

(e) means responsive to the identified component for indicating the speed of the target vehicle corresponding thereto.

Original independent claim 20 disclosed:

In a traffic radar, apparatus for processing Doppler return information comprising:

(a) means for receiving Doppler return information containing at least one return signal derived from a target vehicle, and for presenting said information as digital data,

(b) means for transforming said data into the frequency domain to provide a spectrum that includes frequency components corresponding to Doppler return signals contained in said information,

(c) means for determining the magnitude and frequency of each of said components,

(d) search means for providing a plurality of modes of operation, including a mode in which a target vehicle component of greatest magnitude is identified and a mode in which a target vehicle component of highest frequency is identified, and

(e) means under operator control for selecting either a greater magnitude or highest frequency search, whereby either strongest signal or fastest signal target identification is provided.

New claim 20 is very similar to the original claim 20 but adds clause (c1) and slightly modifies clause (d):

(c1) memory means for storing said components,

(d) search means for providing a plurality of modes of operation, including a mode in which a target vehicle component of greatest magnitude in said memory means is identified and a mode in which a target vehicle component of highest frequency in said memory means is identified.

Defendant Aker worked as an independent contractor designing radar units which were manufactured and sold by ACI. Aker's inventions include the Stalker Dual and Stalker Dual SL radars (collectively "Stalker Dual radars"). The Stalker Dual radars are capable of simultaneously finding and displaying both the strongest and fastest targets. The Stalker Dual radars can search separately on frequency criteria to find the fastest target if and only if a valid strongest target is identified first. A fastest target searched is commenced automatically every time a valid strongest target is identified by the radar. Although the operator can prevent the display of the fastest target, he cannot prevent the Stalker Dual radars from automatically performing a fastest search whenever a valid strongest target has been identified. An operator of the Stalker Dual radars has the option to display the fastest and strongest targets when the device is in moving/opposite lane or stationary modes.

*Summary Judgment Standards*

The Federal Rules of Civil Procedure should be applied in patent cases no differently than they are applied in any other type of case. *See SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1116 (Fed.Cir. 1985). Thus, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 256.

The Federal Circuit has noted that summary judgment may be used as "a useful procedural tool whereby an unnecessary trial is avoided when there are no material facts in dispute." *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1570 (Fed.Cir.1991). Summary judgment is not, however, intended to "substitute for trial when it is indeed necessary to find material facts." *Id.* "A district court should approach a motion for summary judgment on the fact issue of infringement with great care." *Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 528 (Fed.Cir.1996), *cert. denied*, — U.S. —, 118 S.Ct. 56, 139 L.Ed.2d 20 (1997).

### Analysis

■ Plaintiff alleges that defendants have infringed the '246 patent both literally and under the doctrine of equivalents. Defendants have moved for summary judgment on both infringement theories. Analysis of infringement involves a two-step process: (1) determination of the meaning and scope of the patent claims (a question of law), and (2) a comparison of the claims as construed to the device accused of infringing (a question of fact). *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976, 984 (Fed.Cir. 1995) (in banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

## I. Claim Interpretation.

■ The focus in construing disputed terms of a patent claim is on an objective test of what one of ordinary skill in the art at the time of the invention would have understood the terms to mean. *See id.* at 986. In construing the challenged claims, the court looks first to the patent claims, the patent specification, and the prosecution history. *See id.* at 979. The court may refer to other claims in the same patent to ascertain the intended meaning of a disputed term in a claim, but may not read limitations from other claims into an independent claim. *See Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 699 (Fed.Cir.1983), *cert. denied*, 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). The concept of claim differentiation provides that "each claim of a patent constitutes a separate invention and gives rise to separate rights." *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed.Cir.1984); *see Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023–24 (Fed.Cir. 1987) (claim differentiation presumes that the difference between claims is significant).

■ Claims must be read in light of the patent specification. *See Markman*, 52 F.3d at 979; *see also E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed.Cir.1988) ("It is entirely proper to use the specification to interpret what the patentee meant by a word or phrase in the claim."). The specification contains a written description of the invention and includes a best mode or preferred embodiment of the invention. *See Markman*, 52 F.3d at 979. "[T]he description in the specification may act as a sort of dictionary, which explains the invention and may define terms used in the claims." *Id.* Although claims are interpreted in light of the patent specification, this "does not mean that everything expressed in the specification must be read into all the claims." *SRI Int'l*, 775 F.2d at 1121 (quoting

*Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed.Cir.1983), *cert. denied*, 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984)); *see Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1277 (Fed.Cir.1995); *Intervet Am., Inc. v. Kee–Vet Laboratories, Inc.*, 887 F.2d 1050, 1053 (Fed.Cir.1989) ("[L]imitations appearing in the specification will not be read into claims."). "[I]nterpreting what is *meant* by a word *in* a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'" *Id.* (quoting *E.I. du Pont*, 849 F.2d at 1433). The specification identifies only the best mode of practicing an invention, not the scope of the invention. *See Transmatic*, 53 F.3d at 1276. The claims measure the scope of the invention. *See SRI Int'l*, 775 F.2d at 1121.

■ Claims also should be read in light of the patent's prosecution history. *See Markman*, 52 F.3d at 980. Although the prosecution history should be used to interpret the terms of the claims, "it too cannot 'enlarge, diminish, or vary' the limitations in the claims." *Id.* (citations omitted).

■ The court also may consult dictionaries and technical treatises, if necessary, to help the court understand the underlying technology or to find the ordinary meaning of a disputed term. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n. 6 (Fed. Cir.1996). If the court cannot determine the meaning of a disputed term from the patent documents and relevant dictionary definitions, the court may consult extrinsic evidence such as prior art or expert testimony. This evidence is used solely for the court to understand scientific principles, technical terms, or terms of art that appear in the patent and prosecution history. *See Vitronics*, 90 F.3d at 1582–83; *Markman*, 52 F.3d at 980. There is no parol evidence rule in patent law. Extrinsic evidence cannot be used to explain ambiguity in claim terminology or to vary the claim terms. *See Vitronics*, 90 F.3d at 1583; *Markman*, 52 F.3d at 986. "The invention protected by the patent must be covered by the claims, otherwise it is lost." *Id.* at 985.

■ The court begins with an examination of the words of the claims themselves, "both asserted and nonasserted, to define the scope of the patented invention." *Vitronics*, 90 F.3d at 1582. Terms in a claim are generally given their ordinary and customary meaning. *See Hoechst Celanese Corp. v. BP Chemicals, Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 275, 136 L.Ed.2d 198 (1996). However, a patentee may give terms a different meaning, so long as the meaning is stated clearly in the patent specification or file history. *See id.; Markman*, 52 F.3d at 979–80.

The meanings of the terms "or," "preselected," and "criteria," as used in the challenged claims, are central to defendant's summary judgment motion. The court's construction of these disputed terms will govern the court's validity and infringement analysis at all stages of this case, including trial. *See Intervet*, 887 F.2d at 1053; *SRI Int'l*, 775 F.2d at 1121.

Pursuant to the above legal principles, the court heard evidence at the *Markman* hearing for the purpose of better understanding the basic scientific principles and technology of radar devices. At the hearing, several witnesses expressed legal conclusions, including their opinions as to the meaning of disputed terms in the patent claims. We have afforded the witnesses' testimony on claim interpretation no deference and considered this testimony merely as an extension of counsels' legal arguments. *See Markman*, 52 F.3d at 983 (testimony of inventor and patent attorney regarding claim construction is entitled to no deference and amounts to no more than legal opinion); *Chad Indus. Inc. v. Automation Tooling Sys., Inc.*, 938 F.Supp. 601, 604 (C.D.Cal.1996) (testimony regarding claim construction treated as extension of legal argument). Plaintiff filed a motion in limine to exclude evidence of witnesses' claim interpretation (Doc. # 59). For ease of administration, the court heard the witnesses' testimony subject to the above claim construction principles. Accordingly, plaintiff's motion in limine will be denied.[3]

---

**3.** Defendants have filed a motion to strike portions of plaintiff's proposed claim construction findings as inconsistent with the court's request for briefing. The court finds that both parties elaborated on their positions beyond what the court intended in the briefing. Further, plaintiff made many of the same arguments at the *Mark-*

### A. *Meaning Of "Or."*

■ The court construes the term "or" as used in claims 1(e), 16(d) and 20(e) to mean "a choice between either one of two alternatives, but not both." The term "or" should be given its ordinary and accustomed meaning because there is no indication in the '246 patent documents that the inventor intended otherwise. *See Hoechst*, 78 F.3d at 1578; *Transmatic*, 53 F.3d at 1276. "Or" typically is defined as "a choice of available alternatives." *See* Plaintiff's Proposed Claim Construction Findings at 1; Webster's Third New Int'l Dictionary (Unabridged) 1585 (1986) ("choice between alternative things, states, or courses"); Black's Law Dictionary 1095 (6th Ed.1990) ("A disjunctive particle used to express an alternative or to give a choice of one among two or more things."). An "alternative" is defined as "a proposition or situation offering a choice between two things wherein if one thing is chosen the other is rejected." Webster's Third New Int'l Dictionary at 63; Webster's New Collegiate Dictionary 35 (1977) ("a proposition or situation offering a choice between two or more things only one of which may be chosen"); Black's Law Dictionary at 78 ("one or the other of two things"). The ordinary meaning of "or" does not include a choice of both alternatives. Rather, in accordance with the above dictionary definitions, "or" expresses a choice between either one of two alternatives, but not both.

The specification of the '246 patent strongly supports the court's definition of "or." *See Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed.Cir.) (interpretation of term that would exclude the inventor's preferred embodiment in the specification is rarely the correct interpretation), *cert. denied*, 518 U.S. 1005, 116 S.Ct. 2523, 135 L.Ed.2d 1048 (1996). Plaintiff does not contest that the preferred embodiment set forth in the specification uses the term "or" to express a choice between either one of two alternatives, but not both. First, we note that the specification provides for six separate modes of operation under operator control including: (1) stationary mode, strongest signal, (2) stationary mode, fastest signal, (3) moving mode, opposite direction, strongest signal, (4) moving mode, opposite direction, fastest signal, (5), moving mode, same direction, normal processing, and (6) moving mode, same direction, slower target processing. *See* Col. 5, 11. 23–31. The specification simply does not provide for any combination of these six modes so that both fastest and strongest signals may be detected and displayed. *See id.;* col. 2, 11. 6–10 ("various modes of operation may be selected by the operator, including stationary modes in which either the strongest or fastest signal may be selected, moving modes in which oncoming traffic in the opposite lane may be detected on either a strongest or fastest signal basis"). The specification for the '246 patent provides that the radar device reads the "strongest/fastest flag." *See, e.g.,* Fig. 25. If the flag is set for fastest mode, then the device does a fastest target search only. *See id.* If the flag is set for strongest mode, then the device does a strongest target search only. *See id.*

The prosecution history of the '246 patent also supports the court's construction of the term "or." In particular, original claim 1 included a spectrum validation process and the step of "determining the magnitude and frequency of each valid component." Claims 1(d) and (e). New claim, 1 did not include these two steps but added the following:

(d) storing said components in a memory,

(e) searching said components in memory for the component that meets preselected magnitude or frequency criteria, and

(f) indicating the speed of the target vehicle corresponding to the component that meets said criteria.

Plaintiff made similar changes to claim 16. Original claim 16 included means for a spectrum validation process and "means for determining the magnitude and frequency of each valid component and retaining the same in memory." Claims 16(d) and (e). New claim 16 did not include these two clauses but added the following:

(c) memory means for storing said components,

---

*man* hearing that it did in its briefing so that defendant was not prejudiced by the additional

arguments in plaintiff's brief. Accordingly, defendants' motion to strike will be denied.

(d) means for searching the components stored in said memory means to identify the component that meets preselected magnitude or frequency criteria, and

(e) means responsive to the identified component for indicating the speed of the target vehicle corresponding thereto.

The above changes indicate that the new patent discloses a device which conducts searches for either a strongest or fastest target, but not both. The original claims 1(e) and 16(e), which provided for determining magnitude *and* frequency, were eliminated (although amended claim 20(c) retains this language). In the '246 patent as amended, a search is conducted for the single component in memory that meets certain criteria and only the speed of that single target is displayed for the operator. The amended claims simply do not disclose a device that searches and displays both a fastest and strongest target simultaneously based on the same set of data. In fact, the original '246 patent application does not disclose such a device as it was rejected based on obviousness in light of the Muni Quip MDR–1, which is "a Doppler radar that allows selection of the dominant signal *or* high speed target." (emphasis added).

We also find that our construction is consistent with the notice function of patents. The patent holder must distinctly claim his invention so that competitors will be on notice of the scope of the patent holder's rights. *See Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1581 (Fed.Cir.1996); *see also Hoganas AB v. Dresser Indus., Inc.,* 9 F.3d 948, 951 (Fed.Cir.1993) (function of claims is "putting competitors on notice of the scope of the claimed invention"). The Federal Circuit has held that "[w]here there is an equal choice between a broader and a narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is at least entitled to a claim having the narrower meaning, we consider the notice function of the claim to be best served by adopting the narrower meaning." *Athletic Alternatives,* 73 F.3d at 1581; *see Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.,*

93 F.3d 1572, 1581 (Fed.Cir.1996); *see also Paeco, Inc. v. Applied Moldings Inc.,* 562 F.2d 870, 876 (3d Cir.1977) ("Because the claim is capable of two interpretations, we are justified in looking behind the words of the claim to the specification and description of the invention for explication of the Claim's meaning."). Accordingly, we conclude that the notice function of patents is best served in this case by interpreting "or" to mean a choice between either one of two alternatives, but not both.

The language of claims 20(d) and 20(e) also supports the court's construction of "or." Claim 20 discloses:

(e) search means for providing a *plurality of modes of operation,* including a mode in which a target vehicle component of greatest magnitude in said memory means is identified and a mode in which a target vehicle component of highest frequency in said memory means is identified.

(f) means under operator control for selecting *either* a greater magnitude or highest frequency search, whereby *either* strongest signal or fastest signal target identification is provided.

(Emphasis added.) When used in context of the '246 patent, the ordinary meaning of "either" in claim 20(f) is "the one or the other of the two alternatives." Webster's (Unabridged) at 728; Webster's Collegiate at 364. Without importing the limitations of claim 20 into claims 1 and 16, we recognize that terms generally should be given the same meaning throughout a single patent. *See Environmental Designs,* 713 F.2d at 699. Accordingly, the court will construe "or" throughout the '246 patent as "a choice between either one of two alternatives, but not both." [4]

B. *Meaning Of "Preselected" And "Criteria."*

The term "preselected" is used in claims 1(e) and 16(d) while the term "criteria" is used in claims 1(e), 1(f), and 16(d). Claim 1(e) reads: "searching said components in memory for the component that meets prese-

---

**4.** Defendants also argue that its proposed definition of "or" is dictated by 35 U.S.C. § 112 ¶ 6 because claims 1(e), 16, and 20 are in means plus function format. We need not reach this

issue given our ruling which adopts defendants' proposed definition of "or" under the standard claim construction rules.

lected magnitude or frequency criteria." Claim 16(d) similarly reads: "means for searching the components stored in said memory means to identify the component that meets preselected magnitude or frequency criteria." The parties dispute (1) what "criteria" are referred to in these claims and (2) whether the criteria is "preselected" by the operator or already is part of the software within the radar device.

 Plaintiff maintains that "criteria" as used in the claims "embraces the operation of the software in validating the Doppler return signals and determining their magnitude and frequency." On the other hand, defendants claim that "criteria" refers to the actions in the software subsequent to selection of the strongest or fastest mode. The court essentially agrees with defendants' interpretation. The court construes "criteria" in claims 1(e), 1(f), and 16(d) as "standards used to search and find a single fastest or strongest target, depending on the mode selected by the operator." The court construes the term "preselected" in claims 1 and 16 as "a selection of criteria which have been programmed into the software and cannot be altered by the operator." Consistent with these interpretations, the court concludes that the operator has the choice of which preselected criteria will be used, i.e., fastest or strongest target criteria, but the operator cannot alter the criteria the radar device uses to find the fastest or strongest target. In other words, although the operator selects the mode of operation, i.e., fastest or strongest, the operator cannot control how the radar device searches the stored data and determines a fastest or strongest target.

The court's interpretation of "preselected" and "criteria" is consistent with the patent claims. First, claims 1(e) and 16(d) refer to searching for "*the* component that meets preselected magnitude or frequency criteria." (Emphasis added.) Claim 1(f) refers to indicating the speed of *the* vehicle corresponding to *the* component that meets said criteria. In this context, criteria cannot refer to the process of validating multiple Doppler return signals and determining their magnitude and frequency, as plaintiff argues, because no single component is identified during this process. Rather, criteria must refer to the process of searching and finding a single

target for display. Given the operator's choice of strongest or fastest mode, the radar device has a set of criteria for finding a fastest target and a set of criteria for finding a strongest target. Both sets of criteria are programmed into the software of the radar device. Pursuant to claims 1(e) and 16(d) of the '246 patent, there are two different types of searches which can be executed in the radar device depending on whether the operator has selected fastest or strongest mode.

The court's interpretation of "preselected" and "criteria" also comports with the ordinary meaning of these terms. First, the term "preselected" ordinarily is defined as "chosen in advance usually on the basis of a particular criterion." Webster's New Collegiate Dictionary at 910. This definition is consistent with the court's definition of "preselected" as a selection of criteria programmed into the software which cannot be altered by the operator.

"Criteria" ordinarily is defined as standards on which a judgment or decision may be based. Webster's New Collegiate Dictionary at 270. Here, the criteria to find a single fastest or strongest target, from a number of frequency components corresponding to Doppler return signals, is programmed into the software. There are two possible final decisions for the radar device—display of a single fastest target or a single strongest target. Accordingly, there must be two sets of criteria programmed into the software, only one of which will be used during a search depending on the operator's selection of fastest or strongest mode.

The '246 patent specification also supports the court's construction of the terms "preselected" and "criteria." In the specification, a search is conducted to find either the strongest or fastest target. This search takes place after the digital signal processor ("DSP") reads the strongest/fastest flag. See, e.g., Fig. 25. The preselected criteria used in the search include finding the strongest or fastest signal with a non-zero magnitude and an index within specified limits. See, e.g., Figs. 27, 28. A single "component" is not identified until after the DSP determines whether strongest or fastest mode has been selected and a second search is conducted in accor-

dance with the preselected magnitude or frequency criteria. *See, e.g.,* Figs. 25, 27, 28.

For all of the above reasons, the court construes "criteria" as "standards used to search and find a single fastest or strongest target, depending on the mode selected by the operator" and "preselected" as "a selection of criteria which have been programmed into the software and cannot be altered by the operator."

## II. Literal Infringement.

 "Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, *i.e.,* when the properly construed claim reads on the accused device exactly." *Engel Indus., Inc. v. Lockformer Co.,* 96 F.3d 1398, 1405 (Fed.Cir.1996) (citing *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1580 (Fed.Cir.1989)). The determination of infringement is a question of fact. *See Engel,* 96 F.3d at 1406.

 Here, claims 1, 16, and 20 do not read exactly on defendant's Stalker radars. Claims 1, 16, and 20 disclose a method and apparatus for the search and display of a single fastest or strongest target, depending on the mode selected by the operator. In contrast, the Stalker Dual radars always perform a search for both a fastest target and a strongest target. Indeed, if a strongest target that meets certain limits is not identified, the Stalker Dual radar will not perform a search for the fastest target. Further, in moving/opposite lane and stationary modes, the Stalker Dual radars provide for the simultaneous display of both fastest and strongest targets.

 Plaintiff argues that "because the claims are open-ended as a matter of law they are not limited to a system in which only the speed of the strongest or fastest target is displayed." Claims 1, 16, and 20 use the term "comprising" in the opening clause and therefore are considered "open ended" claims. *See Hewlett–Packard Co. v. Repeat–O–Type Stencil Mfg. Corp.,* 123 F.3d 1445, 1451 (Fed.Cir.1997). "Comprising," when used in claim language, means "the named elements are essential, but other elements may be added and still form a construct within the scope of the claim." *Genentech, Inc. v. Chiron Corp.,* 112 F.3d 495,

501 (Fed.Cir.1997). "For example, a pencil structurally infringing a patent claim would not become noninfringing when incorporated into a complex machine that limits or controls what the pencil can write. Neither would infringement be negated simply because the patentee failed to contemplate use of the pencil in that environment." *A.B. Dick Co. v. Burroughs Corp.,* 713 F.2d 700, 703 (Fed.Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984). Thus, an accused device may infringe if it contains all of the limitations of one of the claims but merely adds an additional extraneous limitation. *See Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1482 (Fed.Cir.), *cert. denied,* 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 240 (1984).

In essence, plaintiff argues that defendants have added an extraneous limitation that the Stalker Dual radars can search and display both fastest and strongest targets. Plaintiff ignores the express claim language of the '246 patent. Patent claims 1, 16, and 20 specifically recite that either fastest or strongest targets are searched and displayed. The court has interpreted "or" as a choice between either one of two alternatives, but not both. Therefore, the '246 patent does not read exactly on the Stalker Dual radars, which require both fastest and strongest searches.

In its opposition brief, plaintiff does not argue that defendants have literally infringed the '246 patent by application of 35 U.S.C. § 112, ¶ 6. Defendants raised the issue in their initial memorandum. The patent statute provides:

> an element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6. We find no literal infringement by defendants even under 35 U.S.C. § 112, ¶ 6. The Federal Circuit has held that "[if] the required function is not performed exactly in the accused device, it must be borne in mind that section 112,

paragraph 6, equivalency is not involved." *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934 (Fed.Cir.1987), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988). Here, plaintiff has not established that the required functions of claims 1, 16, or 20, *e.g.,* search and display of either fastest or strongest targets but not both, are performed exactly in defendants' Stalker Dual radars.

For all of the above reasons, the court concludes that defendants have not literally infringed claims 1, 16, or 20 of the '246 patent.

### III. Infringement Under The Doctrine Of Equivalents.

▆ Even if an accused device does not literally satisfy all of the limitations of a patent, infringement may be found under the doctrine of equivalents. *See Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 117 S.Ct. 1040, 1049, 137 L.Ed.2d 146 (1997), *rev'g,* 62 F.3d 1512 (Fed. Cir.1995). The doctrine of equivalents rests on the rationale that limiting enforcement of patent rights to literal infringement may be harsh in some circumstances and "would place the inventor at the mercy of verbalism"—elevating form over substance. *Warner–Jenkinson,* 62 F.3d at 1517 (quoting *Graver Tank Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 607, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)).

▆ To prevail on a claim of infringement under the doctrine of equivalents, a patentee must prove, by a preponderance of the evidence, that "the differences between the claimed and accused products or processes are insubstantial." *Warner–Jenkinson,* 62 F.3d at 1517. The court assesses the substantiality of the differences between two products "according to an objective standard" viewed from "the vantage point of one of ordinary skill in the relevant art." *Id.* at 1519. The doctrine of equivalents is applied on an element-by-element basis, not to the invention as a whole. *See Warner–Jenkinson,* 117 S.Ct. at 1049. The Supreme Court has held that the doctrine of equivalents must be applied such that it "is not allowed such broad play as to effectively eliminate [an] element [of a claim] in its entirety." *Id.; see Dolly, Inc. v. Spalding & Evenflo Cos.,*

*Inc.,* 16 F.3d 394, 398 (Fed.Cir.1994) ("The doctrine of equivalents is not a license to ignore claim limitations.").

Traditionally, courts have applied the "function-way-result" test to measure the substantiality of differences between an accused and claimed device. *Warner–Jenkinson,* 62 F.3d at 1518–21. The test focuses on whether an element of an accused device performs substantially the same function in substantially the same way to achieve substantially the same result as an element of the claimed device. *See id.* at 1518. In *Warner–Jenkinson,* the Federal Circuit held that although the "function-way-result" test can be used to assess whether two devices are equivalent, it is only one of several relevant inquiries.

Another important inquiry in assessing the substantiality of differences is "whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was." *Id.; see also Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,* 868 F.2d 1251, 1261 (Fed.Cir.1989). "Known interchangeability" of an element in the accused device with a claimed element is "potent evidence that one of ordinary skill in the relevant art would have considered the change insubstantial." *Warner–Jenkinson,* 62 F.3d at 1519. Known interchangeability is evaluated at the time of infringement, not at the time the patent was issued. *Warner–Jenkinson,* 117 S.Ct. at 1053.

The Supreme Court has declined to adopt a specific linguistic framework for applying the doctrine of equivalents. *Id.* at 1054. Rather, the Court emphasizes that each framework or test should focus on the ultimate inquiry: "Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" *Id.*

▆ Here, defendants have failed to establish as a matter of law that its Stalker Dual radars do not infringe claims 1, 16, and 20 of the '246 patent under the doctrine of equivalents. Although we held above that the '246 patent does not read exactly on defendants' Stalker Dual radars, we cannot conclude that the differences between the

elements of the Kustom and Stalker Dual radars are not "insubstantial" as a matter of law. Based on the conflicting evidence presented by the parties, particularly the experts' reports and testimony presented by the parties, there remains an issue of fact as to whether the Stalker Dual radars perform substantially the same functions in substantially the same ways to achieve substantially the same results as the Kustom radar.

The court notes that evidence of the known interchangeability of the Stalker Dual radars' element of searching and displaying both the fastest and strongest targets with the element of the '246 patent of searching and displaying either the fastest or strongest target may be important in determining whether defendants' Stalker Dual radars infringe plaintiff's patent. Moreover, the court notes that the doctrine of equivalents cannot be used to erase "meaningful structural and functional limitations of the claim[s]" in the '246 patent. *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1425 (Fed.Cir. 1997). At this point, given the limited briefing on the issue and the remaining disputed factual issues, the court cannot conclude as a matter of law whether application of the doctrine of equivalents to defendants' Stalker Dual radars would erase functional limitations of the '246 patent or merely combine two separate elements already disclosed in the '246 patent, *i.e.,* fastest and strongest searches.

Defendant has pointed to a number of differences between the Stalker Dual radars and the '246 patent. For example, defendants argue that the Stalker Dual radars can perform both a fastest and strongest target search and display from the same set of data while the '246 patent must collect a new set of data if the operator wishes to change modes. Although this may be a difference, there is a factual dispute as to whether this difference is substantial for purposes of the doctrine of equivalents analysis. The factual record is not so one-sided that the court can resolve the issue as a matter of law. *See Anderson,* 477 U.S. at 251–52.

Defendants also assert that prosecution history estoppel bars Kustom from asserting a claim of infringement under the doctrine of equivalents. *See Warner–Jenkinson,* 117 S.Ct. at 1049–51. A patent hold-

er cannot limit or modify one of its claims to avoid rejection by the PTO and thereafter attempt to expand the claim to include subject matter thus excluded or any equivalent thereof. *See* Peter D. Rosenberg, Patent Law Fundamentals § 17.07[2] at 17–130 (Rev.1997). Defendants apparently maintain that the original '246 patent provided for the search of both strongest and fastest targets but the amended patent eliminated these claims and provided for the search of either strongest or fastest targets. The record simply does not support defendants' argument. Indeed, the PTO examiner rejected original claims 1, 16, and 20 as obvious in light of the Muni Quip MDR–1, which is "a Doppler radar that allows selection of the dominant signal *or* high speed target." (Emphasis added.) Kustom certainly did not avoid rejection of the amended application by deleting "and" and inserting "or" in its claims. Rather, Kustom emphasized several differences between its device and the prior art, including the conversion to digital, not analog, data, and the multi-mode operation of the radar. Original and amended claim 20(d) specifically provide for multi-mode operation. Further, original claim 20(c), which provided for "means for determining the magnitude and frequency of each of said components," was not altered on amendment. After carefully reviewing the original and amended '246 patent applications, we find that Kustom did not change its device from one that provided both fastest and strongest target information to a device that provided information on either the fastest or strongest target. Both the original and amended applications appear to disclose a device that provides for the search and display of either the fastest or strongest target. Accordingly, prosecution history estoppel is not applicable on the facts of this case.

For all of the above reasons, the court will deny defendants' motion for summary judgment with respect to plaintiff's claim of infringement under the doctrine of equivalents.

IT IS THEREFORE ORDERED that defendants' motion for partial summary judgment (Doc. # 39) is granted with respect to plaintiff's claim of literal infringement of

claims 1, 16, and 20 of U.S. Patent No. 5,528,246.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Doc. # 39) is denied with respect to plaintiff's claim of infringement under the doctrine of equivalents of claims 1, 16, and 20 of U.S. Patent No. 5,528,246.

IT IS FURTHER ORDERED that defendants' motion to strike portions of plaintiff's proposed claim construction findings (Doc. # 65) is denied.

IT IS FURTHER ORDERED that plaintiff's motion in limine (Doc. # 59) is denied.