**GENLYTE THOMAS GROUP LLC Plaintiff**

v.

**NATIONAL SERVICE INDUSTRIES, INC., et al. Defendants**

No. CIV.A.3:00CV–174–S.

United States District Court, W.D. Kentucky at Louisville.

Feb. 14, 2003.

James R. Higgins, Jr., Jeffrey A. Haeberlin, Middleton & Reutlinger, Thomas Patrick O'Brien, III, Frost Brown Todd, LLC, Louisville, Gerald C. Willis, Cassidy, Shade & Gloor, George P. McAndrews, James R. Nuttall, Matthew G. McAndrews, Gerald C. Willis, Jr., McAndrews, Held & Malloy, Chicago, for Genlyte Thomas Group LLC, plaintiff.

Mary Janice Lintner, Donald L. Cox, Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, Clare Feler Cox, Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, for NSI Enterprises, Inc. dba Lithonia Lighting Co, Acuity Lighting Group, Inc. dba Lithonia Lighting Co, Acuity Brands, Inc., defendants.

## MEMORANDUM OPINION

SIMPSON, District Judge.

This matter is before the court for consideration of the following motions:

1. Motion of the defendants, National Service Industries, Inc., et al., for a *Markman* hearing and briefing schedule (DN 67).

2. Motion of the plaintiff, Genlyte Thomas Group LLC, for partial summary judgment of infringement of U.S. Patent No. 5,057,979 (DN 45).

3. Motion of the defendants, National Service Industries, Inc., et al., for summary judgment of non-infringement (DN 81).

For the reasons set forth herein, the court will deny the motion for a *Markman* hearing, grant the motion of the plaintiff and deny the motion of the defendants with respect to the claim of infringement.

This action alleges infringement of U.S. Patent No. 5,057,979 ("the '979 patent"), owned by Genlyte Thomas Group LLC ("Genlyte"). The subject of this patent is a recessed lighting fixture. Genlyte contends that a group of defendants, all currently or formerly doing business as Lithonia Lighting Company ("Lithonia")[1], have infringed and are continuing to infringe the '979 patent through the manufacture, use, and sale of recessed lighting fixtures marketed under the names LCP Insta–Lite and LC6 Insta–Lite.

In *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) the United States Supreme Court quoted, adding emphasis to certain portions of 2 W. Robinson, Law of Patents § 732, pp. 481–483 (1980):

> The duty of interpreting letters-patent has been committed to the courts. A patent is a legal instrument, to be construed, like other legal instruments, according to its tenor...Where technical terms are used, or where the qualities of substances or operations mentioned or any similar data necessary to the comprehension of the language of the patent are unknown to the judge, the testimony of witnesses may be received upon these subjects, and any other means of infor-

---

1. The caption herein utilizes the first-named defendant in the Second Amended Complaint. However, for purposes of clarity in this opinion, the defendants will be referred to collectively as "Lithonia," the company through which the accused products were manufactured and sold.

mation be employed. *But in the actual interpretation of the patent the court proceeds upon its own responsibility, as an arbiter of the law, giving to the patent its true and final character and force.*

*Markman,* 116 S.Ct. at 1394–95.

■ Genlyte has stated that it "believes the terms of Claim 17 [the only claim of the '979 patent which is alleged to be infringed] should be given their plain and ordinary meaning and that a claim construction hearing in this case is unnecessary." Plaintiff's Reply Memorandum in Support of its Motion for Partial Summary Judgment of Infringement, pg. 3. The court agrees. *Markman* does not require a hearing. The court finds that the matters raised with respect to the construction of claim 17 are not technically complicated, and that testimony of witnesses to aid in the court's comprehension of the science in issue in this motion is unnecessary. The motion for a *Markman* hearing and briefing schedule will be denied.

"A patent infringement analysis involves two steps: 1) claim construction; and 2) application of the properly construed claim to the accused product." *TechSearch, L.L.C. v. Intel Corp.,* 286 F.3d 1360, 1369 (Fed.Cir.2002), *citing, Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995)(*en banc*), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). A jury demand has been made. Therefore, under the traditional summary judgment standard, we may grant summary judgment on infringement only if no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425 (6th Cir.1962). "Summary judgment is appropriate when it is apparent that only one conclusion as to infringe-

ment could be reached by a reasonable jury...Summary judgment of noninfringement is also appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement..." *TechSearch, L.L.C.,* 286 F.3d at 1369. Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

The '979 patent contains nineteen claims. Only claim 17, an independent claim, is alleged to be infringed by the Lithonia fixtures. "Each claim must be considered as defining a separate invention." *Jones v. Hardy,* 727 F.2d 1524, 1528 (Fed.Cir.1984); 35 U.S.C. § 282. Claim 17 claims the following invention:

A recessed lighting support frame for holding a lamp housing, comprising:

a molded recessed lighting frame member of a plastic material having an opening in which a lamp housing is mounted so that light from the lamp mounting is projected through said opening; and

hangerways molded in one piece with said frame member and being disposed on either side of said opening, said han-

gerways adapted and constructed to receive hanger bars for supporting said frame member or said hanger bars.

■ The intrinsic evidence of record, consisting of "the patent itself, including the claims, the specification and, if in evidence, the prosecution history," *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996), is "the most significant source of the legally operative meaning of disputed claim language," *Id.*, and so should be the first source to which the court refers. The words in a claim are generally given their ordinary and customary meaning unless the patentee clearly states a special definition of a term in the patent specification or file history. *Id.* Claims must be read in view of the specification of which they are a part. *Id., quoting, Markman*, 52 F.3d at 979. Finally, the prosecution history is often of significance in the construction of claims. *Id., citing, Markman*, 52 F.3d at 980.

Genlyte asserts that no special definitions are given to any of the terms in claim 17. It contends that we should give ordinary meaning to the terms. Reading the claim language itself, the invention taught in claim 17 comprises a plastic plaster frame having an opening in which a lamp housing is mounted so that light from the lamp housing is projected through the opening, and having hangerways which are molded as one piece with the plastic frame for holding hanger bars on either side of the opening. We find that this construction comports with the elements in claim 17 and the description of the invention contained in the specification.

Lithonia contends that in its prosecution of the '979 patent, Genlyte disclaimed all but *elastomeric* plastic for its plaster frame, in distinguishing its invention over the prior art patent to Druffel. Lithonia

urges that the limitation is evidenced by 1) Genlyte's reference to "molded elastomer" in the prosecution history, and 2) its statement in the specification that "[t]he present device is preferably molded of Polyman 509, a tradename of a flame retardant mix of ABS and PVC by A.L. Schulman Company." '979 Specification, Col. 8, lines 34–36.[2]

■ First, we note that "as a general rule claims of a patent are not limited to the preferred embodiment [citation omitted] or to the examples listed within the patent specification. [citation omitted]." *Dow Chemical Co. v. United States*, 226 F.3d 1334, 1342 (Fed.Cir.2000). Therefore, a reference to an elastomer-containing product in a preferred embodiment of the device, without more, is wholly insufficient to limit the scope of "plastic material."

■ If we consider the mention of Polyman 509 along with the mention of elastomer in the prosecution history, Lithonia still fails to carry the day. Lithonia suggests that the court utilize the prosecution history as an aid in construing the claim. "A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Independent Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed.Cir.1999), *quoting, Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257, 9 U.S.P.Q.2d 1962, 1966–67 (Fed.Cir.1989). Limitations, therefore, cannot be read into the claims from the specification or the prosecution history. *Id., citing, Intervet Am., Inc. v. Kee–Vet Labs., Inc.*, 887 F.2d 1050, 1053 (Fed.Cir.1989); *Texas Instruments, Inc. v. United States Int'l Trade*

---

**2.** Lithonia contends that ABS contains an elastomer, polybutadiene. For purposes of

this opinion, we will accept this statement as true.

*Comm'n,* 805 F.2d 1558, 1563 (Fed.Cir. 1986)("This court has cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification."). The prosecution history would be useful only in interpreting the claims, not altering them. In this instance, we find that the term "plastic material" needs no further construction than its ordinary meaning, to one skilled in the art. Further, the prosecution history does not contain any suggestion that Genlyte clearly disavowed claim coverage to any "plastic material" which might be utilized by one skilled in the art in practicing this invention. *See, York Products, Inc. v. Central Tractor Farm & Family Center,* 99 F.3d 1568, 1575 (Fed.Cir.1996)("Unless altering claim language to escape an examiner rejection, a patent applicant only limits its claims during prosecution by clearly disavowing claim coverage.").

The reference to elastomer arose in remarks to an amendment filed in response to the February 8, 1991 final office action. In that action, the examiner allowed claim 17, but rejected claim 1 of the application as anticipated by the prior art patent to Druffel.[3] In order to further distinguish claim 1 over the teachings of Druffel, the words "molded plastic" were added to further define "frame," and the integrated "nailways" File History, pg. 67. The term "elastomer" is not in the claim language as originally drafted nor as rewritten. In the remarks concerning this rewritten claim, it is noted that "[t]he frame of Druffel is apparently of sheet metal or the like and is not molded elastomer." File History, pg. 70. This remark is an observation concerning what material is utilized, and what is not utilized, in Druffel. It is not a remark which identifies the materials taught in claim 1 of the '979 patent. If the

remark can be read to imply a contrast between the materials taught in Druffel and in the '979 patent, the statement simply compares Druffel's sheet metal with the '979 patent's preferred embodiment which specifies Polyman–509, by way of example.

Further, the revisions and the single mention of "elastomer" were addressed to claim 1, not claim 17. Claim 17 had been approved without any discussion concerning the element of "plastic material." The initial rejection of the claim was on the basis that it was anticipated by the prior art patent to Cohon. The anticipation found by the examiner concerned structure rather than materials. See, Patent History, pg. 46. The term "plastic material" appeared in all drafts of claim 17, including the approved revision.

Lithonia asserts that the same language cannot be interpreted in two different ways in two different claims in the same patent. See, Defendants' Response to Plaintiff's Motion for Partial Summary Judgement, pg. 14. However, the mention of elastomer to which Lithonia refers does not compel differing constructions of claim 1 and claim 17.

Considering the reference to elastomer in the prosecution history together with the specification still does not yield the construction sought by Lithonia. The term "molded plastic" was rewritten into claim 1 and was approved. Nothing in claim 1, in the file wrapper, or the specification, or considering all of these sources together, limits the coverage of claim 17 to elastomeric plastic.

Lithonia urges the court to construe claim 17 as teaching "a prior art plaster frame; wherein the plaster frame is

---

**3.** On its second amendment, the claim was allowed as rewritten and became claim 3 in

the patent's final form.

formed from elastomeric plastic." Defendants' Response to Plaintiff's Motion for Partial Summary Judgment, pgs. 17–18. To the extent that this construction requires "plastic material" to be limited to elastomeric plastic, the contention is rejected for the reasons just discussed. To the extent that Lithonia seeks a finding by the court that claim 17 teaches nothing more that a prior art plaster frame formed of a different material, this contention constitutes a challenge to validity which will be addressed at a later date. A separate motion by Lithonia for summary judgement of invalidity (DN 82) and a motion by Genlyte for partial summary judgment that the patent-in-suit is not anticipated, indefinite or unenforceable (DN 80) remain pending.

■ Genlyte seeks partial summary judgment on its claim that the Lithonia LCP Insta–Lite and LC6 Insta–Lite fixture literally infringe claim 17 of the '979 patent. We conclude that there is no genuine issue of material fact concerning infringement, and that Genlyte is entitled to partial summary judgment as a matter of law.

As stated in *TechSearch, L.L.C.*, 286 F.3d at 1371, "[t]o establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused [device]." In this record, Lithonia has admitted, as indeed it must, the facts establishing literal infringement by its fixtures. That is, it admits in answer to requests for admissions that its fixtures are comprised of a plastic plaster frame having an opening in which a lamp housing is mounted so that light from the lamp housing is projected through the opening, and having hangerways which are molded as one piece with the plastic frame for holding hanger bars on either side of the opening. Defendants' Response to Plaintiff's Second Set of Requests for Admissions, Nos. 14—32. Additionally, Genlyte has offered the testimony of co-inventor Kusmer, admittedly one skilled in this art, who has testified that each and every element of claim 17, as this court has construed that claim, are present in the LCP Insta–Lite fixture. It is not disputed that his testimony applies equally to the LC6 Insta–Lite fixture, in this analysis.[4] Depo. of Raymond J. Kusmer, pgs. 146–47.

■ Lithonia contends that it did not admit infringement through its responses to the requests for admissions. It couched its responses in terms designed to protect its position with regard to a challenge to the validity of the '979 patent. However, it has admitted all factual bases for a finding of literal infringement. Lithonia need not admit the legal conclusion that its fixtures infringe. This court need only find that the undisputed facts meet the test for a finding of literal infringement. There can, of course, be no recovery by Genlyte should it be determined that the '979 patent is invalid. There can be no infringement of an invalid patent. *See, Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1550 (Fed.Cir.1983)("Acting in the interest of judicial economy, the trial court proceeded to decide, correctly, the infringement issue, while fully recognizing that infringement of an invalid patent can create no legal liability.") As noted herein, there are additional motions which address the validity issue, as well as other matters, which will be taken up in due course.

For the reasons stated, the motion for partial summary judgment of infringement of the '979 patent will be granted and the cross-motion for summary judgment of

---

4. It appears that the two fixtures are the same except that the LC6 has a shallower housing to fit a different application.

non-infringement will be denied. A separate order will be entered in accordance with this opinion.

### ORDER

Motions having been made and for the reasons set forth in the memorandum opinion entered herein this date and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that

1.. The motion of the defendants, National Service Industries, Inc., et al., for a *Markman* hearing and briefing schedule (DN 67) is **DENIED.**

2. The motion of the plaintiff, Genlyte Thomas Group LLC, for partial summary judgment of infringement of U.S. Patent No. 5,057,979 (DN 45) is **GRANTED.**

3. The motion of the defendants, National Service Industries, Inc., et al., for summary judgment of non-infringement (DN 81) is **DENIED.**