**HARRAH'S ENTERTAINMENT, INC. et al., Plaintiffs,**

v.

**STATION CASINOS, INC. et al., Defendants.**

No. CV–S–01–0825DAERJJ.

United States District Court, D. Nevada.

June 3, 2004.

J. Ebert, J. William Ebert, Ltd., Las Vegas, NV, Kevin Johnson, Fish & Neave, Mark Rowland, Fish & Neave, Norman Beamer, Fish & Neave, Patricia Campbell, Fish & Neave, Ray Zado, Fish & Neave, Renee Staslo, Fish & Neave, Palo Alto, CA, for Harrah's Operating Company, Inc., Harrah's Entertainment, Inc., Plaintiffs.

Ike Epstein, Beckley Singleton, Chtd., Michael Feder, Beckley Singleton, Chtd., Las Vegas, NV, Christopher Chalsen, Milbank, Tweed, Hadley & McCloy, Christopher Gaspar, Milbank, Tweed, Hadley & McCloy, Lawrence Kass, Milbank, Tweed, Hadley & McCloy, New York City, for Boulder Station, Inc., Defendants.

*AMENDED ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 112*

EZRA, Chief Judge.

The court heard Defendants' Motion on March 23, 2004. Mark D. Rowland, Esq., appeared at the hearing on behalf of Plaintiffs; Ike Lawrence Epstein, Esq., Lawrence Kass, Esq., Christopher Chalsen, Esq., Michael Feder, Esq., Christopher Gaspar, Esq., and Rich Haskins, Esq., appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Defendants' Motion for Partial Summary Judgment of Invalidity Under 35 U.S.C. § 112.

## BACKGROUND

Plaintiffs Harrah's Entertainment, Inc., and Harrah's Operating Company, Inc., ("Plaintiffs") obtained three patents relating to a system for coordinating the monitoring and accessing of information relating to customer gaming and non-gaming activity across multiple casino locations. More specifically, the patents, termed the National Player Recognition patents, including U.S. Patents Nos. 5,761,647 ("the '647 patent"), 6,003,013 ("the '013 patent"), and 6,183,362 ("the '362 patent"), describe and claim methods and systems for rewarding customer patronage, tracking customers, and making customer data available to affiliated casino properties.

Plaintiffs sued Defendants Station Casinos, Inc., Boulder Station, Inc., Palace Station Hotel & Casino, Inc., Santa Fe Station Inc., Sunset Station, Inc., Texas Station, LLC, Green Valley Ranch Gaming, LLC, and Does 1–20 ("Defendants") for patent infringement. The National Player Recognition patents that Plaintiffs assert against Defendants are all predicated on the use of a "theoretical win profile" in a casino player reward system.

The precise meaning of the term theoretical win profile and whether it was sufficiently claimed in the patents lies at the heart of the dispute between the parties in the instant motion. According to Plaintiffs, the theoretical win profile is a measure of a customer's value to the affiliated

casino properties. Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment ("Plaintiffs' Opposition") at 3. Plaintiffs distinguish between theoretical win and theoretical win profile. The former term is a statistically determined amount of money a casino expects to win from a customer's play, and was a well-known term in the art at the time the instant suits were filed. Plaintiffs state that the patents-in-suit extend the concept of theoretical win to include betting data from affiliated casino properties. Plaintiffs state that the specifications for the patents include a description of the idea that the theoretical win profile can be expressed as a "average daily value." Plaintiffs' Opposition at 4 (citing Oliver Ex. 1 ('647 patent) at 12:55—13:21)(further citations omitted). Plaintiffs maintain, however, that there are alternative ways of determining and expressing a theoretical win profile, and that a person with ordinary skill in the art would have understood the various formulas, methods, and algorithms used in calculating its value. *Id.* at 5. Plaintiffs further note that the key to the theoretical win profile is that it includes a large number of data points, and it provides a more accurate estimate of a customer's value to the casino company as a whole, as opposed to solely one casino property. *Id.*

Defendants state that although the term theoretical win profile is included in every claim of the '647 patent, numerous claims of the '013 patent, and every claim of the '362 patent, the term is not defined in any of the patent specifications, and the prosecution histories allegedly confirm that the term has no definite structure or meaning. Defendants' Motion for Partial Summary Judgment of Invalidity Under 35 U.S.C. § 112 ("Defendants' Motion") at 2–3. While Defendants recognize that the term theoretical win is a well-known concept, they allege that Plaintiffs have given theoretical win profile inconsistent mean-ing such that competitors are not given notice as to the metes and bounds of the claim scope so that they can avoid infringement. *Id.* at 3. Specifically, Defendants state that the patent specification fails to include a method, algorithm, or formula for generating or calculating a theoretical win profile. Defendants complain that nothing in the patents explains how the theoretical win profile is updated, generated, or determined. *Id.* at 4.

In support of its argument, Defendants cite relevant language in the specifications of all three of the patents-in-suit. Further, Defendants argue that extrinsic evidence confirms the intrinsic evidence and establishes that those with ordinary skill in the art do not understand the term theoretical win profile. The extrinsic evidence that Defendants refer to is the declaration of Bart A. Lewin ("Lewin"), an independent consultant qualified in information systems, and the testimony and expert report of Mr. James Kilby ("Kilby"), a consultant on casino management and trends in the gaming industry.

The court notes that a Markman hearing was held to determine the issues of patent claim construction, and the Magistrate Judge's Order, filed on October 6, 2003, ("Order") was filed after the instant motions were filed. The Magistrate Judge held that, with respect to theoretical win profile, the parties proposed definitions were strikingly similar with the exception of the Plaintiffs' inclusion of the term "affiliated" as describing the casino properties. Order at 12. The court adopted Plaintiffs' definition of theoretical win profile which stated:

"Theoretical win" is an estimate of the winnings of a casino from a customer's bets. A "theoretical win profile" is a summary or analysis of estimates of a casino's winnings from customer's betting activity over a period of time, such

as an hour, day or trip. In the context of the claimed invention, a theoretical win profile is generated based on estimates of casino winnings from the customer across the affiliated casino properties. *Id.* Defendants argue that despite the fact that the Markman hearing may have resulted in a construction of the contested phrase, Defendants' submission of a possible claim construction was not an admission that the term was indefinite.

In *ASM America, Inc. v. Genus, Inc.,* 2002 WL 1892200 (N.D.Cal.2002), the court stated that there was some ambiguity in the case law as "to whether a finding of indefiniteness should occur during claim construction, or whether it should occur at a later date." 2002 WL 1892200, \*15. The Federal Circuit, in discussing claim construction stated that "[a]mbiguity, undue breadth, vagueness, and triviality are matters which go to claim validity for failure to comply with 35 U.S.C. § 112 ¶ 2, not to interpretation or construction." *Id.* (quoting *Intervet America, Inc. v. Kee–Vet Laboratories,* 887 F.2d 1050, 1053 (Fed. Cir.1989)). The court agrees with the holding in *ASM America* that "the Court must attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness...." *Id.* This finding is further bolstered in that the Magistrate's order in the instant case did not address the issue of indefiniteness when it considered the claim construction of the term theoretical win profile. Accordingly, the fact that Defendants submitted a proposed construction does not amount to an admission that the proposed construction was in fact definite.

Defendants move for partial summary judgment and a declaration that all of the claims of each of the patents-in-suit having the limitation "theoretical win profile," are invalid because they: (1) are indefinite under 35 U.S.C. § 112, second paragraph; (2) are unsupported by an adequate writ-

ten description under 35 U.S.C. § 112, first paragraph; and (3) fail to meet the best mode requirement under 35 U.S.C. § 112, first paragraph.

Defendants filed the instant motion on January 17, 2003. Plaintiffs filed their Opposition on February 28, 2003. Defendants filed their Reply to Plaintiffs' Opposition ("Defendants' Reply") on March, 21 2003, and an Amendment to their Reply ("Amendment") on March 28, 2003.

*STANDARD OF REVIEW*

"A party seeking to invalidate a patent must overcome a presumption that the patent is valid." *Carnegie Mellon University v. Hoffmann–LaRoche Inc.,* 148 F.Supp.2d 1004, 1009 (N.D.Cal.2001) (citing 35 U.S.C. § 282) (further citations omitted). The challenging party must prove invalidity by clear and convincing evidence. *United States Gypsum Co.,* 74 F.3d 1209, 1212 (Fed.Cir.1996.) The standard of clear and convincing evidence "has been described as evidence which produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.'" *MDS Associates, Limited Partnership v. United States,* 37 Fed.Cl. 611 (1997).

Summary judgment in a patent case, as in all other cases, is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Carnegie Mellon University,* 148 F.Supp.2d at 1009. The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party can neither stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

## DISCUSSION

### I. *The Patents*

Patent '362 is a continuation of Patent '647. The two patents provide for a system and method for implementing a customer tracking and recognition program that encompasses customers' gaming and non-gaming activity at a plurality of affiliated casino properties. Patent '013 adds to the capacity of the system by setting out a method of differentiating customers according to their worth to the casino, and employing the use of various physical instrumentalities that alert casino personnel when a special status customer is recognized.

The system comprehensively described by all three patents comprises a local area network (LAN) located at each affiliated casino property and a wide area network (WAN) which couples data from amongst the various LANs. A management system associated with each casino's LAN receives customer data from card readers, workstations, and dumb terminals, which are located at various venues throughout the casino and couples the received data to a data base that is accessible by all affiliated casino properties. The preferred embodiment of the invention provides for a central patron database (CPDB) which is comprised of customer accounts from all of the participating casino properties, supported on a central LAN, that is coupled to the casino LANs through the WAN. In operation, the system allows personnel of individual casinos to access information on-line about particular clients.

Patents '647 and '362 describe an invention that implements a point system that awards points to customers based on their tracked activity at all casino properties. A customer can redeem points for various gifts and services at the affiliated casino properties. Since the points can be used at any of the affiliated casinos, through a program of weighting points awards at particular venues, the owners of affiliated casino properties can target new or under-performing casinos.

The invention described in Patent '013 differs from conventional fee-based membership systems and point-based systems, in that it provides activation of physical instrumentalities directly based on recognition of a customer's status through use of an identification card. For example Patent '013 describes a physical instrumentality that, when a valuable customer is recognized at a slot machine, activates a visible light on top of the slot machine and alerts casino personnel that the valuable customer is present.

All three of the above described patents use the term theoretical win profile in their respective claims. The most common use of the term is as follows:

A computer-implemented method for differentiating a customer from other customers at any of a plurality of casino properties, the method comprising: ...; periodically updating a *theoretical win profile* for the customer as a function of estimated winnings from the monitored betting activity of the customer at the

plurality of casino properties over a time period, the *theoretical win profile* for subsequently determining complementaries or services to be provided to the customer; establishing a status of the customer as a function of the *theoretical win profile* . . . ."

Patent '647, Claim 1; Patent '013, Claim 3, Claim 5, Claim 7, Claim 25; Patent '362, Claim 1 (emphasis added).

## II. *Scope of Defendants' Challenge*

As a preliminary matter, Plaintiffs argue in its Opposition that Defendants' Motion should be limited to a challenge of theoretical win profile as opposed to challenges to the terms *updating* and *providing* and *status* of the theoretical win profile. The court agrees with Plaintiffs that the evidence presented by Defendants goes to the validity of the term theoretical win profile. The additional terms were added as limitations, but Defendants have not focused its challenge on the validity of those terms within the patents-in-suit. Accordingly, the court will consider the instant motion as a challenge to the term "theoretical win profile."

## III. *Indefinite*

■ Defendants first claim that Plaintiffs' patents are indefinite pursuant to 35 U.S.C. § 112 which reads that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. A claim is indefinite if "its legal scope is not clear enough that a person of ordinary skill in the art could determine whether a particular composition infringes or not." *Geneva Pharmaceuticals, Inc. v. Glaxosmithkline PLC*, 349 F.3d 1373, 1384 (Fed.Cir.2003). In analyzing a claim of indefiniteness, courts "typically limit [their] inquiry to the way one of skill in the art would interpret the claims in view of the written description

portion of the specification." *Solomon v. Kimberly–Clark Corp.*, 216 F.3d 1372, 1378 (Fed.Cir.2000). Accordingly, courts consider a limited range of evidence when evaluating whether a claim is indefinite pursuant to 35 U.S.C. § 112. *Id.*

■ The definiteness requirement of 35 U.S.C. § 112 requires that "the claim be amenable to construction, however difficult that task may be." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375. A claim is indefinite only if the "claim is insolubly ambiguous, and no narrowing construction can properly be adopted." *Id.* "If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds." *Id.*

■ The court finds that Defendants have adequately established through clear and convincing evidence that the claims are indefinite. Plaintiffs have put forth a three-step method of determining a theoretical win profile. They state that a theoretical win profile can be "determined by and/or updated using a) estimated winnings from the betting activity of the customer, b) at the plurality of casino properties, and c) over a period of time." Plaintiffs' Opposition at 19–20.

Plaintiffs argue that the particular form of a customer's theoretical win profile does not serve as a limitation on the claimed invention. Plaintiffs therefore maintain that they need not provide a specific means of calculating theoretical win profile because the term can be computed using a number of methods. Plaintiffs, however, do state that a theoretical win profile is a single value. However in Plaintiffs' Opposition, they state that the "essential point" regarding the theoretical win profile is that "[t]he value used by a casino company

to reward a customer's patronage at any of its affiliated properties, whether expressed as an average or otherwise, *included a large number of data points* and provided a more accurate estimate of the customer's value to the casino as a whole . . . ." Plaintiffs' Opposition at 5 (citing Oliver Ex. 1 ('647 patent) at 12:55–13:21; Ex. 2 ('013 patent) at 14:9–42; Ex. 3 ('362 patent) at 12:65–13:31; Boushy ¶¶ 14–18; Spencer ¶ 19) (emphasis added). Plaintiffs attempted to clarify the issue at the hearing by suggesting that a theoretical win profile could be reflected in a chart with several numbers on a page, each one reflecting a theoretical win profile.

Plaintiffs have also stated that one could use various types of averaging, such as weighted averages, straight line averages, and averages divided by some period of time. Boushy Deposition at 53–56. However, Bart Lewin ("Lewin"), one of Defendants' experts, stated that the term average "itself is vague because there are many interpretations of average." Lewin Decl. at ¶ 11. At the same time, Plaintiffs state that calculation of a theoretical win profile can be performed through using commutative operations of addition, multiplication and division, and thereby no particular formula to arrive at the profile is necessary. Plaintiffs provide no further detail in describing how one might compute a theoretical win profile.

While the court notes that "[m]athematical precision should not be imposed for its own sake," in the instant case, permitting Plaintiffs to patent its three-part functional test, is indefinite under the second paragraph of 35 U.S.C. § 112. *Modine Manufacturing Company v. United States International Trade Commission*, 75 F.3d 1545,1557 (Fed.Cir.1996). The court finds that Plaintiffs' failure to state how one might compute a theoretical win profile, or even consistently delineate whether it is a single number, or a large number of data points, results in an overbroad patent that claims a function, without limiting the means by which one might arrive at that function.

The Federal Circuit discussed the applicability of the definiteness requirement to claims drafted using means plus function language. In *In re Donaldson Co.*, 16 F.3d 1189 (Fed.Cir.1994) that court stated that "[a]lthough paragraph six [of § 112] statutorily provides that one may use means-plus-function language in a claim, one is still subject to the requirement that a claim 'particularly point out and distinctly claim' the invention. . . If an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112." 16 F.3d at 1195 (en banc). Accordingly, defining a limitation purely by function, such that it covers all means of achieving the function, renders a claim indefinite. *See MDS Associates Limited Partnership v. United States*, 37 Fed.Cl. 611, 625 (holding a claim indefinite for failing to disclose any means for calculating CPA Range and CPA Bearing using particular input signals).

The only guidance Plaintiffs have provided for calculating the term profile is that it may be deduced from a variety of methods of averaging "or otherwise," and the average may be arrived at using any type of commutative operation. The patents in suit thereby attempt to claim every method of calculating, using every type of commutative mathematical operation, to achieve its three part description of a theoretical win profile. By impermissibly not limiting the means of calculating a theoretical win profile, "one skilled in the art is left to guess which of the multiple means for performing the claimed function is covered by the patent." *Id.* As stated above, a claim is indefinite if "its legal scope is

not clear enough that a person of ordinary skill in the art could determine whether a particular composition infringes or not." *Geneva Pharmaceuticals,* 349 F.3d at 1384.

Aside from the lack of a formula or description of a means to calculate theoretical win profile, there are other flaws in the patents-in-suit that support this court's finding of indefiniteness. Plaintiffs state that the term theoretical win profile has various "expressions" and "embodiments" such as the "average daily theoretical win," the "average theoretical win profile" and the "average daily wager figure" all of which Plaintiffs contend point to a single measure for comping customers, namely the theoretical win profile. Plaintiffs' Opposition at 20–21. The court finds that instead of being descriptive, these terms, although not arising to the level of "semantic indefiniteness,"[1] serve to further hinder a competitor from determining whether their invention is infringing on the patent.

Moreover, the Federal Circuit held that "[w]hen the meaning of the claims is in doubt, especially when, as is the case here, there is close prior art, they are properly declared invalid." *Amgen, Inc. v. Chugai Pharmaceutical Co.,* 927 F.2d 1200, 1218 (Fed.Cir.1991). Although the court has denied Defendants' Motion for Summary Judgment as to whether Plaintiffs acted unconscionably by not disclosing allegedly material prior art, there can be little dispute that the prior art in this case is very close.

For example, at the hearing, Defendants presented to the court a picture of a computer screen monitor using Plaintiffs own Northern Nevada Regional Marketing System. In using its program, Plaintiffs were able to access a computer screen that displayed the theoretical win for their Reno and Lake Tahoe casinos, over a period of 6, 12, and 24 months.[2] Accordingly, while Plaintiffs' invention, by compiling data over multi-properties, may have constituted a sufficiently new concept to achieve a patent, there can be little doubt that the ability to display a theoretical win over time, and have two properties' data listed on the same screen, constituted "close" prior art.

The court notes, however, that several of Defendants' arguments in favor of its Motion for invalidity on the basis of indefiniteness are flawed. For example, Defendants cite the testimony of two of Plaintiffs' own experts to show that because the claims lack any formula or method of determining the theoretical win profile, they were inevitably flawed. Defendants state that Plaintiffs' experts, Mr. Rowe and Mr. Spence, admitted that the underlying math was necessary to determine whether the prior art might disclose a theoretical win profile when shown documents of systems used by Harrah's and a third party respectively. Neither expert, however, had seen the alleged documents prior to being deposed and both stated that they could not testify

---

1. The court agrees with Plaintiffs that its use of various terms throughout the specification to signify a theoretical win profile do not arise to the level of semantic indefiniteness as was found in *Allen Eng'g Corp. v. Bartell Indus. Inc.* 299 F.3d 1336 (Fed.Cir.2002)(holding that in the case where patentee was attempting to argue that parallel meant perpendicular with respect to a particular claim, and a claim ended with an incomplete limitation, the claims at issue were indefinite.)

2. For purposes of Defendants' Summary Judgment Motion on the issue of inequitable conduct, there remain issues of fact as to whether the Northern Nevada Regional Marketing System constituted material prior art, as it was allegedly not used in the context of comping customers, nor did it compile the theoretical win amounts over multiple casino properties.

as to whether the system used a theoretical win profile without information about what the specific inputs represented. The court agrees with Plaintiffs that these "admissions" do not establish that a particular formula was necessary, but rather that such information was necessary to determine whether the figures used correlated with the components, defined in the Markman hearing, which make-up the theoretical win profile.

The court also does not rely on Defendants' argument regarding the patent examiner. In its motion, Defendants point to the fact that Mr. Boushy, Plaintiffs' primary inventor, admitted that the patent examiner misunderstood the term theoretical win profile during the prosecution of the patent, and therefore the specification had inadequately communicated to the examiner the concept of theoretical win profile. Defendants' argument has little merit because the fact that the patent examiner first misunderstood the term, without any showing that he had ordinary skill in the art, is irrelevant to the instant analysis.

The court, however, ultimately agrees with Defendants that to the extent that the Plaintiffs' patents-in-suit contain the limitation of theoretical win profile, they are invalid due to indefiniteness.[3]

## IV. Inadequate Written Description

■■ Defendants next argue that the patents-in-suit having the limitation "theoretical win profile" are indefinite pursuant to 35 U.S.C. § 112. 35. U.S.C. § 112 states in pertinent part:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or

with which it is most nearly connected, to make and use the same...."

35 U.S.C. § 112, ¶ 1. The description must enable persons of ordinary skill in the art "to recognize that [the inventor] invented what is claimed." In re Gosteli, 872 F.2d 1008, 1012 (Fed.Cir.1989). "Adequate description of the invention guards against the inventor's overreaching by insisting that he recount his invention in such detail that his future claims can be determined to be encompassed within his original creation." Vas–Cath, Inc. v. Mahurkar, 935 F.2d 1555, 1561 (Fed.Cir.1991) (quoting Rengo Co. v. Molins Mach. Co., 657 F.2d 535, 551 (3d.Cir.1981)). The issue of whether a written description is adequate is a question of fact. Id. at 1563.

Defendants argue that Harrah's patents lack a sufficient explanation of the term theoretical win profile such that an ordinarily skilled artisan might practice it. Defendants argue that because there is indisputably no disclosure of a formula, method, or algorithms in the patent specification, the claims are indefinite. As discussed above, the court agrees that the term theoretical win profile is indefinite as it does not describe sufficient means such that a competitor would be on notice as to what was covered by the patent. Accordingly, the written description is inadequate as a matter of law.

## V. Best Mode Requirement

■■■ 35 U.S.C. § 112 provides that the specification "shall set forth the best mode contemplated by the inventor of carrying out the invention." 35 U.S.C. § 112. In analyzing whether or not a patent complies with the best mode requirement, courts make two factual inquiries. First, courts consider whether the inventor had a best mode of practicing the claimed inven-

---

3. The court notes that according to Mr. Lewin, Defendants' expert, only claim 1 and dependent claim 2 of the '013 patent do not require the theoretical win profile limitation.

tion at the time the patent application was filed. *Chemcast v. Arco Indus. Corp.*, 913 F.2d 923, 927–28 (Fed.Cir.1990). The inquiry is subjective and "addresses whether the inventor must disclose any facts in addition to those sufficient for enablement." *United States Gypsum Company v. National Gypsum Company*, 74 F.3d 1209, 1212 (Fed.Cir.1996). If the inventor did in fact have a best mode of practicing the claimed invention, the second inquiry is whether the specification adequately disclosed what the inventor contemplated as the best mode such that those with ordinary skill in the art could practice it. *Id.* "Assessing the *adequacy* of the disclosure, as opposed to its *necessity,* is largely an objective inquiry that depends on the scope of the claimed invention and the level of skill in the art." *Chemcast Corp.*, 913 F.2d at 928. Determining whether or not the best mode requirement has been satisfied is considered a question of fact. *Northern Telecom Ltd. v. Samsung Electronics Co., Ltd.*, 215 F.3d 1281, 1286 (Fed. Cir.2000).

Defendants allege that Plaintiffs concealed its own preferred implementation of theoretical win profile, including a way to apply a series of functions and/or factors, such as weighted averages, straight line averages, and/or averages divided by some period of time, as well as theoretical win profiles in the form of tables. Defendants state that Plaintiffs "slipped by" by providing only a simplified example of the term, which Defendants contest was actually only "theoretical win." Defendants' Reply at 1.

Defendants also note that one of Plaintiffs' inventors, Mr. Boushy, admitted that Plaintiffs had developed specific implementations, some of which were considered preferred. Defendants' Motion at 25. Mr. Boushy testified as follows:

Q. * * * My question is, did you have in mind when you filed the application any specific implementation of an algorithm or formula to calculate theoretical win profile?

A. I think what theoretical win profile is intended to do is it is intended to provide an estimation for the casino as to what the expected win would be from that customer. The specific implementations of that—there are numerous ones that we use internally, and so I wasn't limiting the concept of an estimation for customer valuation to a specific implementation.

Q. You were aware of specific implementations?

A. Uh-huh, I was.

Bagley Decl. Exh. 3 (Boushy transcript), 07/29/02, at 53:11–12; 56:15–16. Mr. Boushy further testified as follows:

Q. Were some of those [specific implementations] considered by you to be preferred versus other implementations at the time?

A. Yes.

Q. Which one at the time of May 24, 1996 at the time of filing your application was the implementation that you were contemplating with your new system?

A. For the implementation of what?

Q. Theoretical win profile.

\* \* \* \* \* \*

A. An example might be weighed averaging. Example might be straight line averaging. Example might be an average then divided by some period of time in order to create a theoretical win profile.

*Id.* at 55:13–54:7. Defendants state that because Plaintiffs failed to disclose any implementations of the calculation of theoretical win profile, let alone the preferred ones, Plaintiffs' patents are invalid for fail-

ure to comply with the best mode requirement.

In rebuttal, Plaintiffs argue that Defendants failed to put forth any evidence that a best mode was in fact known to the inventors of the patents-in-suit. Plaintiffs contend that the above cited language from Mr. Boushy's testimony does not establish that he perceived a best mode for the patents-in-suit at the time of filing the application. Plaintiffs argue that even though Mr. Boushy may have considered some methods of implementation preferred, that does not establish that any one implementation was considered the best mode. Plaintiffs' Opposition at 39. Plaintiffs point out that he was not asked what implementations he preferred over others. Plaintiffs state that whether or not Mr. Boushy had in mind a best mode as opposed to a preferred mode precludes summary judgment as it is an issue of material fact.

Plaintiffs then state that to the extent that Mr. Boushy expressed a best mode, he was referring to different types of averaging, which was allegedly disclosed in the patent application and patents-in-suit. *Id.* at 41. Plaintiffs support the contention by pointing to the following language in the patents-in-suit:

> Comps are awarded to a customer according to the customer's **average daily theoretical win**, which is an estimate of the casino's **average daily winnings from the customer** ... [O]n **average** a casino will win a statistically determinable amount of money, i.e. the theoretical win, from a customer who bets an average of $5,000 per trip ...
>
> Comping decisions will at least by based on consistent estimates of the **customer's average** theoretical win profile ... [T]he average daily wager figure will include a large number of data points.

Plaintiffs' Opposition at 41 (citing Oliver Ex. 1 ('647 patent) at 12:56–66, 13:11–21;

Ex. 2 ('013 patent) at 14:10–18. 14:31—41; Ex. 3 ('362 patent) at 12:66–13:9. 13:21–31; Ex. 4 at HARS 004623–24 (emphasis added)). Plaintiffs state that they were not required to provide any more specific information given that Defendants have not shown that Mr. Boushy had any more specific knowledge of the types of averaging than that disclosed in the patents-in-suit quoted above, or that he preferred one type of averaging over another. Plaintiffs thereby contend that there is a genuine issue of fact as whether the above disclosure of averaging would have been sufficient for one of ordinary skill in the art. Plaintiffs' Opposition at 42.

 The court finds that there are genuine issues of material fact as to whether or not Plaintiffs possessed a best mode of implementing the inventions embodied in the patents-in-suit. While the court finds Plaintiffs' bolding of the word "average" in its patent specifications an inadequate disclosure of the alleged best mode, the court finds that Defendants have not provided sufficient, clear and convincing evidence to establish that Mr. Boushy had a best mode of practicing the invention.

Defendants cite Mr. Boushy listing several types of averaging that were considered preferred. There is, however, a difference between a preferred and a best mode and given the heavy presumption in favor of patent validity, the court declines to invalidate the patent on such a noticeable dearth of evidence as to the subjective state of mind of the inventor, as required by 35 U.S.C. 112. Other courts have required much more definitive statements of the best mode. *See United States Gypsum Company v. National Gypsum Company,* 74 F.3d 1209, 1213 (Fed.Cir.1996) (quoting the inventor definitively stating "[a]t the time the application was filed, I considered a perlite supplied by Silbrico

... to be the best commercially available...."). Accordingly, the court GRANTS Defendants' Motion for Partial Summary Judgment of Invalidity under 35 U.S.C. § 112.

## CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.